**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

NYLA FOSTER; LUC BENSIMON;
JESSICA HICKLIN; C.K.; and KANSAS
STATEWIDE TRANSGENDER
EDUCATION PROJECT,

                *Plaintiffs*,

        v.

JEFF ANDERSEN, in his official capacity as
Secretary of the Kansas Department of Health
and Environment; ELIZABETH W. SAADI,
in her official capacity as State Registrar for
the State of Kansas; and KAY HAUG, in her
official capacity as Director of Vital Statistics
for the State of Kansas,

                *Defendants*.

Civil Action No. 18-2552

## PLAINTIFF C.K.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PROCEED PSEUDONYMOUSLY

NOW COMES Plaintiff C.K. (hereinafter "Movant"), by and through his undersigned counsel, and respectfully submits this memorandum of law in support of his motion to proceed pseudonymously, under his initials, in order to protect his identity from public disclosure.

## INTRODUCTION

Movant, a transgender man born in Kansas and living in Oklahoma, is challenging the constitutionality of the State of Kansas' policy and practice of categorically barring transgender persons from correcting the gender marker on their birth certificates (hereinafter, the "Birth Certificate Policy"). The Movant lives a private life and the fact that he is transgender is not publicly known, outside of a limited number of people, mostly close and personal relationships. His identity and transgender status is not known by people in his workplace and larger

community.  While he was able to correct his driver's license and Social Security records to accurately reflect his sex as male, Movant was forced to disclose his transgender status to limited senior personnel at his employer, via his birth certificate, in order to secure that employment.  It is no secret that transgender persons have long been subject to discrimination, harassment, and even violence on account of their transgender status.  Moreover, a person's transgender status and medical condition are sensitive and highly personal information, the forcible disclosure of which, as Movant alleges in this action, violates his constitutional right to privacy.  Forcing transgender people whose identity and transgender status are not publicly known, such as Movant, to disclose their identities in public court records in order to vindicate their constitutional rights, including their right to privacy, exposes them to very harms they seek to remedy and prevent, and subjects them to significant harm, including stigmatization, discrimination, harassment, and even violence.

Accordingly, Movant respectfully asks this Court for permission to bring this action using an assumed name, under his initials, for the purpose of protecting his identity from public disclosure.  Movant has no objection to providing his actual name to Defendants and the Court, though Movant requests that the Court enter a protective order barring further dissemination of his name and requiring that any documents containing his name be filed under seal.  Finally, in moving to proceed under a pseudonym and to seal any document revealing his true identity, Movant does not intend to prevent the public from observing the proceedings or rulings of this court, but only to prevent disclosure of his identity.

## **ARGUMENT**

As a general matter, a complaint must state the names of all parties, Fed. R. Civ. P. 10(a), however, "there may be exceptional circumstances warranting some form of anonymity in

judicial proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000).  "The rule . . . is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).  Indeed, while this Court has recognized that "identifying a plaintiff only by a pseudonym is an unusual procedure," it is to be allowed "where there is an important privacy interest to be recognized," and is "subject to a decision by the judge as to the need for the cloak of anonymity."  *Doe v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1288 (D. Kan. July 18, 2017) (citing *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979)).   The Tenth Circuit has recognized that plaintiffs should be allowed to proceed anonymously "where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name."  *M.M. v. Zavaras*, 139 F.3d 789, 802 (10th Cir. 1998).[1]

The Court may use informed discretion to weigh a plaintiff's "right to privacy against the countervailing public interest in determining that the motion to proceed under a fictitious name should be denied."  *Zavaras*, 139 F.3d at 803; *see also James*, 6 F.3d at 242.  In evaluating a request for anonymity, "the court should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns."  *Pl. B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) (citation and quotation omitted); *see also Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *James*, 6 F.3d at 238; *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).  *Cf. Femedeer*, 227 F.3d at 1246

---

[1] The Supreme Court has implicitly endorsed the use of pseudonyms to protect plaintiffs' privacy. *See Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Doe v. Bolton,* 410 U.S. 179 (1973) (abortion); *Poe v. Ullman,* 367 U.S. 497 (1961) (birth control).

(noting that "it is proper to weigh the public interest in determining whether some form of anonymity is warranted."). Among the questions courts ask when analyzing a request to proceed pseudonymously are: (1) whether the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (citing *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992)); (2) whether the plaintiffs seeking anonymity "[are] challenging the constitutional, statutory, or regulatory validity of government activity," *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 416 (10th Cir. 1982); (3) whether they "involv[e] matters of a highly sensitive and personal nature," *Femedeer*, 227 F.3d at 1246; *Zavaras*, 139 F.3d at 803; or (4) whether identification creates a risk of real danger of physical harm," *id.*

In addition, Federal Rule of Civil Procedure 26(c) specifically permits the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon motion of a party. The granting of a protective order under Rule 26(c) requires a showing of good cause by the movant, which Plaintiff has shown here.

### A. Denial Of The Motion To Proceed Pseudonymously Would Cause The Injury This Litigation Challenging A Governmental Policy Seeks To Avoid.

Movant is challenging a government activity. Specifically, Plaintiffs are challenging the constitutionality of Kansas's Birth Certificate Policy and its enforcement by Defendants, as well as the burdens it places on the rights of transgender people. Moreover, one of Movant's claims is that Kansas's Birth Certificate Policy impermissibly violates his right to privacy by forcing the disclosure of his identity and transgender status. It would be paradoxical and unjust to require a plaintiff to disclose in public the very information he seeks to prevent from disclosure through this case. *See Lindsey*, 592 F.2d at 125 (explaining "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have

sustained the injury which by this litigation they seek to avoid." (citation omitted)); *see also M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710-JAR-EB, 2018 WL 806210, at *3 (D. Kan. Feb. 9, 2018) (finding that the "real potential of additional psychological harm—one of the very injuries litigated against—is enough to outweigh the public interest in disclosure" of the plaintiff's identity). "Justice should not carry such a high price." *Francis*, 631 F.3d at 1319. The Court should give due consideration to Movant's concerns about being forced to maintain the suit in his own name. *Id.*

### B. Denial Of The Motion To Proceed Pseudonymously Would Necessarily Require The Disclosure Of Highly Sensitive And Personal Information.

Movant's challenge to Kansas's Birth Certificate Policy is based on the need to protect him from the disclosure of highly personal and sensitive information, namely, Movant's transgender status and medical condition. Specifically, the disclosure of Movant's identity would mean the disclosure of his transgender status and diagnosis of gender dysphoria. However, courts have recognized that a person's transgender status is of an "excruciatingly private and intimate nature" that "is really beyond debate" "for persons who wish to preserve privacy in the matter." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see also Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 2018 WL 1896341, at *6 (D.P.R. Apr. 20, 2018) ( holding that "forced disclosure of a transgender person's most private information," that being "their transgender status," violates "their constitutional right to informational privacy"); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that "requiring Plaintiffs to disclose their transgender status . . . directly implicates their fundamental right of privacy."), *reconsideration denied*, No. 15-11834, 2016 WL 106612 (E.D. Mich. Jan. 10, 2016); *K.L. v. State*, No. 3AN-11-05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is

entitled to protection."). Simply put, one's gender identity is "among the most intimate parts of one's life." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. July 6, 1992). "Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest." *Arroyo Gonzalez*, 2018 WL 1896341, at *5.

Recognizing the highly personal and sensitive nature of a person's transgender status, courts have routinely allowed transgender litigants to proceed under pseudonym. *See*, *e.g.*, *Arroyo Gonzalez*, 305 F. Supp. 3d 327; *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Doe v. D.C.*, No. CV 13-878 (RDM), 2016 WL 6088262 (D.D.C. Oct. 18, 2016); *Love*, 146 F. Supp. 3d 848; *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174 (N.D. Ohio Nov. 9, 2001); *Blue Cross*, 794 F. Supp. at 74 (allowing transgender plaintiff to proceed pseudonymously because "[a]s a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion."); *McClure v. Harris*, 503 F. Supp. 409 (N.D.Cal. 1980), *rev'd on other grounds, sub nom. Schweiker v. McClure*, 456 U.S. 188 (1982); *Doe v. McConn*, 489 F. Supp. 76, 77 (S.D. Texas 1980); *Doe v. Alexander*, 510 F. Supp. 900 (D. Minn. 1981).

Furthermore, Movant's medical condition, gender dysphoria, would be released to the public if this motion is not granted. "There is no dispute that confidential medical information is entitled to constitutional privacy protection." *A.L.A. v. W. Valley City*, 26 F.3d 989, 990 (10th Cir. 1994). Indeed, "[t]he Tenth Circuit Court of Appeals 'has repeatedly interpreted the Supreme Court's decision in *Whalen* as creating a right to privacy in the non-disclosure of personal information,' including confidential medical information." *Royce v. Veteran Affairs Reg'l Office*, No. CIV.A. 08CV01993KMTK, 2009 WL 1904332, at *7 (D. Colo. July 1, 2009)

(quoting *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000)); *see also Herring*, 218 F.3d at 1175 (concluding plaintiff "alleged a violation of a constitutional right to privacy in the non-disclosure of information regarding one's HIV status by a government official"); *cf. Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (noting that "many courts have recognized pseudonym use" in cases involving mental health). Accordingly, a medical condition such as gender dysphoria, which is highly private information, warrants protection from disclosure. *See Powell*, 175 F.3d at 112 ("transsexuals are among those who possess a constitutional right to maintain medical confidentiality.").

Based on the above, the Court should find Movant's privacy interest sufficient to proceed anonymously.

### C. Disclosure Of Movant's Identity Would Expose Him To Stigmatization, Discrimination, Harassment, And Violence.

In addition, courts have recognized that real danger of physical harm is "an exceptional circumstance warranting some form of anonymity in judicial proceedings." *Femedeer*, 227 F.3d at 1246; *see Zavaras*, 139 F.3d 803; *see also Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, No. 16-CV-2801-JWL-TJJ, 2017 WL 3839416, at *11 (D. Kan. Sept. 1, 2017). Whereas the risk to one's personal or professional reputation may not constitute sufficient damage to permit a plaintiff to proceed pseudonymously, *see Lindsey*, 592 F.2 at 1125, forced disclosure of a person's transgender status "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez*, 2018 WL 1896341, at *6; *see also F.V.*, 286 F. Supp. 3d at 1137 ("Transgender people who present mismatched identification are verbally harassed, physically assaulted, denied service or benefits, or asked to leave the premises."). "The hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n. 8 (D.C.

2014); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."); *Karnoski v. Trump*, No. 17-Civ-1297, 2018 WL 1784464, at *10 (W.D. Wash. Apr. 13, 2018) ("The history of discrimination and systemic oppression of transgender people in this country is long and well-recognized."); *Love*, 146 F. Supp. 3d at 856 (noting "there is a great deal of animosity towards the transgender community"); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) ("Transgender people have suffered a history of persecution and discrimination . . . this is not much in debate." (citation omitted)).

"Moreover, this history of persecution and discrimination is not yet history." *Adkins*, 143 F. Supp. 3d at 139.  A recent study revealed that nearly half (48%) of transgender people have been denied equal treatment, verbally harassed, and/or physically attacked because of being transgender.  *See* James, S. E., et al., Nat'l Ctr. for Transgender Equality, *The Report of the 2015 U.S. Transgender Survey* (2016), at 198, *available at* https://goo.gl/jBze6c.  Specifically, nearly half (46%) of transgender people have been verbally harassed and almost one in ten (9%) have been physically attacked because of being transgender.  *Id.*

These considerations are even more acute for transgender people in Kansas, or Oklahoma like Movant.  There is no question that transgender individuals in Kansas and Oklahoma face high levels of discrimination, harassment, and violence.  For example,  24% of Kansan and 36% of Oklahoman transgender people who have shown an identity document with a name or gender that did not match their gender presentation report having been verbally harassed, denied benefits or service, asked to leave, or assaulted.  *See* Nat'l Ctr. for Transgender Equality, *2015 U.S. Transgender Survey: Kansas State Report* (2017), at 3, *available at* https://goo.gl/MS7sNZ;  *see*

Nat'l Ctr. for Transgender Equality, *2015 U.S. Transgender Survey: Oklahoma State Report* (2017), at 3, *available at* https://goo.gl/zTXGrC.   Additionally, in 2016 alone, the Kansas City Anti-Violence Project, an organization that works with LGBT people experiencing intimate partner and hate violence in the Kansas City metropolitan region, supported 34 people who experienced anti-transgender bias.   Nat'l Coal. of Anti-Violence Programs, *Lesbian, Gay, Bisexual, Transgender, Queer, and HIV-Affected Hate Violence in 2016* (2016), at 48-49, *available at* https://goo.gl/t7HSG4.

Thus, because of the stigma placed upon transgender individuals and the real risks of discrimination, harassment, and violence transgender people face on account of their transgender status, courts have allowed transgender plaintiffs to proceed under pseudonyms. *See*, *e.g.*, *Blue Cross*, 794 F. Supp. at 74 (noting that "in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure"); *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009) (shielding the publication of a transgender individual's name in seeking a court order regarding a name change based upon his "right to feel threatened for his personal safety in the event his transgender status is made public").   Indeed, the "most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Blue Cross*, 794 F. Supp. at 74.   In this case, the Movant has alleged that he fears he will be subjected to discrimination, harassment, and violence should his transgender status become publicly known.   Based on the above, Movant's fears are reasonable and the harm threatened is severe.

Movant's fears are based on the widespread misunderstanding of, and hostility towards, transgender persons, which has resulted in discrimination and harassment, as well as the prevalence of violence against transgender individuals. The threat of physical harm to transgender individuals due to the disclosure of their transgender status is real. As one court recognized, "there exist numerous documented instances of those targeted for violence based on their . . . gender identity." *In re E.P.L.*, 891 N.Y.S.2d at 621.

As such, this Court should grant Movant's request because otherwise there is a strong likelihood that he would be subjected to discrimination, harassment, and violence.

### D.  The Public Interest Counsels In Favor Of Granting Movant's Request To Proceed Pseudonymously.

The protection of constitutional rights and liberties is of the utmost public interest, and lawsuits seeking to vindicate and protect those rights serve the public. The "ultimate test" to determine whether a plaintiff may proceed anonymously is "whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Roe v. Catholic Health Initiatives Colorado*, No. 11-CV-02179-WYD-KMT, 2012 WL 12840, at *5 (D. Colo. Jan. 4, 2012). Movant simply seeks to vindicate and protect his constitutional rights and liberties, which apply to all persons in Kansas. Forcing an individual to disclose the very information the disclosure of which he argues would violate his constitutional right to privacy would dissuade other similarly situated individuals from bringing forth such claims and encourage the violation of the fundamental right to privacy. *Cf. Doe v. Stand. Ins. Co.*, No. 1:15-CV-00105-GZA, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015) ("To deny Plaintiff's request under the circumstances of this case might not

only prevent Plaintiff from proceeding on her claim, but might also discourage others . . . from asserting their claims.").

Movant does not seek to restrict the public's right to access the materials, proceedings, and court rulings in this case. Movant's request is narrowly tailored to prevent the disclosure of his identity.  "Particularly when the public will have access to the facts relevant to the parties' arguments and the Court's ultimate decision in the case, an order permitting Plaintiff to proceed under a pseudonym will not unreasonably interfere with the public's interest in access to judicial records and will promote the public's interest" by protecting everyone's constitutional rights. *Stand. Ins. Co.*, 2015 WL 5778566, at *3.

Thus, "[t]he public also has an interest in seeing this case decided on the merits" and permitting Movant to proceed pseudonymously "will serve the public's interest in this lawsuit by enabling [the claims he presents] to go forward." *Adv. Textile Corp.*, 214 F.3d at 1073.

**E.  Granting Movant's Request Would Cause No Prejudice To Defendants.**

Movant does not seek to withhold his identity from Defendants or the Court, but only to proceed pseudonymously, under his initials, and to prevent disclosure of his identity in public documents.   Allowing Movant to proceed under a pseudonym under the aforementioned conditions will not prejudice Defendants; Defendants will know Movant's true identity, will have full discovery rights as the case progresses, and will only be barred from using or disclosing Movant's name to the public or outside the litigation.  *See Doe v. Porter*, 370 F.3d 558, 560-61 (6th Cir. 2004); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988); *see also USD No. 237 Smith Ctr. Sch. Dist.*, 2017 WL 3839416, at *11.  "[I]t is unclear how [the Court's grant of the requested relief] would . . . hinder[] [Defendants'] preparation" of the case,

as Defendants here would still be able "to obtain all the necessary information to address" the issues in this case without public disclosure of Movant's name.  *Porter*, 370 F.3d at 561.

## CONCLUSION

Because the risks associated with the disclosure of Movant's identity are real and substantial, and Movant should not be required to risk exacerbating the very harms he is attempting to prevent in an effort to enforce his rights, a protective order is necessary to prevent the Movant from being subjected to revealing sensitive personal and medical information, harassment, discrimination, or physical harm.  Such an order would not compromise Defendants' ability to conduct their defense.  For these and the foregoing reasons, Movant respectfully requests the Court to grant this motion to proceed pseudonymously under his initials.

Dated on this 15th day of October, 2018.

Respectfully submitted,

*/s/ James D. Lawrence*
James D. Lawrence (Bar No. 22565)
BRYAN CAVE LEIGHTON PAISNER LLP
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
t: (816) 374-3378 | f: (816) 855-3378
jdlawrence@bclplaw.com

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
        EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
t: (212) 809-8585 | f: (212) 809-0055
ogonzalez-pagan@lambdalegal.org

Katherine A. Keating*
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
t: (415) 268-1972 | f: (415) 430-4372
katherine.keating@bclplaw.com

Kara N. Ingelhart*
LAMBDA LEGAL DEFENSE AND
        EDUCATION FUND, INC.
105 West Adams Street, Suite 2600
Chicago, Illinois 60603
t: (312) 663-4413 | f: (312) 663-4307
kingelhart@lambdalegal.org

*Attorneys for Plaintiffs*

* Application for admission *pro hac vice* forthcoming.