# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

NYLA FOSTER,
LUC BENSIMON,
JESSICA HICKLIN,
C.K., and
KANSAS STATEWIDE
  TRANSGENDER PROJECT,

    Plaintiffs,

      v.

JANET STANEK, in her official capacity
  as Secretary of the Kansas Department
  of Health and Environment,
KAY HAUG, in her official capacity as
  State Registrar for the State of Kansas,
  and
JASON MATHEWSON, in his official
  capacity as Director of Vital Statistics for
  the State of Kansas,

    Defendants.

Case No. 2:18-cv-02552-DDC-KGG

## BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT

Relief from the Consent Judgment is warranted under Fed. R. Civ. P. 60(b)(5) because of changed circumstances that could not have been anticipated when the judgment was initially entered: namely, a new statute that requires Defendants to act in a way that would violate said judgment.

The new statute makes prospective application of the Consent Judgment inequitable. Therefore, the Court should modify the judgment to remove those portions with prospective application.

### NATURE OF THE CASE AND RELEVANT FACTS

Plaintiffs brought this suit contending that the Kansas Department of Health and

Environment's "Birth Certificate Policy" was unconstitutional because the policy required that a person's birth record reflect such person's biological sex and not the person's claimed "gender identity." (Cmpl. ¶¶ 173–214, ECF No. 1.) Defendants filed an answer in due course, which mostly denied Plaintiffs' allegations. (*See* Answer *passim*, ECF No. 18.) But Defendants did admit "that no specific statute or regulation" prohibited altering or amending a birth certificate to reflect a person's felt gender identity instead of biological sex. (*Id.* ¶ 63.)

In June 2019, the parties agreed to (and the Court approved) a Consent Judgment. (*See* ECF No. 33.) Among other things, the Consent Judgment "permanently enjoined [Defendants] from enforcing the Birth Certificate Policy" and required them to "provide certified copies of birth certificates to transgender individuals that" matched those individuals' stated gender identity. (*Id.* at 3.) Defendants have complied with the Consent Judgment ever since.

However, on April 27, 2023, the legislature passed (over the Governor's veto), SB 180, 2023 Kan. Sess. Laws ch. 84, *available at* https://www.sos.ks.gov/publications/sessionlaws/2023/Chapter-84-SB-180.html. This law—which goes into effect next week—fundamentally changes the circumstances under which the consent judgment was issued. SB 180 defines "[a]n individual's 'sex' [to] mean[] . . . biological sex, either male or female, at birth[.]" *Id.* § 1(a)(1). It also requires "any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data [to] identify each individual who is part of the collected data set as either male or female at birth." *Id.* § 1(c).

ARGUMENT

1. *The Law Underlying the Consent Judgment Has Changed So Significantly that Enforcing the Judgment Prospectively Would Be Inequitable.*

Both the relevant statutory law and caselaw have changed significantly since the judgement in this case was issued four years ago. Such changes justify modifying the Consent Judgment. "The party seeking modification of a consent decree bears the burden of showing that a significant change either in factual conditions or in law warrants revision of the decree." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018) (internal quotes omitted). But "[o]nce a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotes omitted).

"A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become [legally] impermissible . . . ." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992). Modification may also "be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Id.*

1.1. *It is impossible to comply with both the Consent Judgment and SB 180.*

The passage of SB 180 plainly meets either of these standards because it is impossible for Defendants to comply with both SB 180 and the Consent Judgment. The Consent Judgment requires defendants to issue birth certificates that state a person's sex as something other than the one he or she was born into; section 1(c) of the bill prohibits this practice. That is enough to warrant modification.

Bolstering this position is the fact that continued enforcement of the Consent Decree could "undermine the sovereign interests and accountability of [the] state government[]." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). Indeed, "remedies outlined in consent decrees involving state officeholders may improperly deprive future officials of their designated legislative and executive powers" if not carefully

3

policed and flexibly modified. *Id.; see also Moore v. Circosta*, 141 S. Ct. 46, 47 (2020) (Gorsuch, J., dissenting) (arguing mere possession of executive power is not "a blank check . . . to rewrite [statutes] in any and all consent decrees [an agency] may wish to enter"). That is why the Supreme Court has said that the "case for modification is . . . strong[]" where continued enforcement of a judgment would require a party to affirmatively violate governing law. *Kansas v. Nebraska*, 574 U.S. 445, 472 (2015).

Those concerns weigh heavily here. Defendants may have been free to enter into a stipulated judgment allowing them to issue non-conforming birth certificates four years ago, in the absence of any definitive legislative statement on the matter. (*See* Answer ¶ 63.) But now that the legislature has spoken, the agency is bound to execute the law as written. The Court should therefore modify the Consent Judgment accordingly.

1.2. *The legal recitations in the consent judgment are no longer good law.*

Furthermore, the underlying caselaw on which the Consent Judgment purports to be based has eroded.[1] The judgment is based on a stated finding that the refusal to issue birth certificates reflecting a person's felt gender identity "violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Consent J. 2–3.) This claim derives from two then-recent district court cases: *Gonzalez v. Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018), and *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018). (Consent J. 2.)

---

[1] Defendants believe the existence of SB 180 is sufficient to justify modification of the consent judgment; they need not show that the caselaw has changed as well. *See Rufo*, 502 U.S. at 388 (stating "modification . . . warranted when the statutory *or* decisional law has changed" (emphasis added)); *see also Salazar v. Buono*, 559 U.S. 700, 718, 720–22 (2010) (indicating district court should have modified injunction in light of recent statute, despite dissent argument that underlying constitutional law was unchanged). Nonetheless, in anticipation of Plaintiffs' potential arguments, it is worth noting recent developments in decisional law that undermine the judgment.

However, since the Consent Judgment, other courts have begun to address the transgender-birth-certificate issue. And several judges have determined that policies prohibiting such changes do not offend the Constitution. *See Gore v. Lee*, No. 3:19-cv-0328, 2023 WL 4141665, slip op. at 19–61 (M.D. Tenn. June 22, 2033); *see also In re Change of Gender of O.J.G.S.*, 187 N.E.3d 324, 331 (Ind. Ct. App. 2022) (Bailey, J., concurring) (rejecting dissent's constitutional argument in case holding state's courts have no authority to change "gender markers" on birth certificates); *In re Adelaide*, 191 N.E.3d 530, 537–38 (Ohio Ct. App. 2020) (upholding statute denying court jurisdiction to order gender-identity-based changes to birth certificates despite federal ruling holding blanket policy against such changes unconstitutional); *In re G.M.*, No. 19-0948, 2020 WL 3408589, at *3 (W. Va. June 18, 2020) (holding state's courts have no authority to order changes to birth certificates based on felt gender identity, despite dissent's argument that such a rule is unconstitutional); *MH v. 1st Judicial Dist. Ct.*, 465 P.3d 405, 412 (Wy. 2020) (Kautz, J., concurring) ("[C]hanges to a birth certificate which seek to alter 'the facts of birth' undermine the integrity and the accuracy of the birth certificate."); *cf. Adams ex rel. Kasper v. Sch. Bd.*, 57 F.4th 791, 800–12 (11th Cir. 2022) (en banc) (holding, in case involving sex-segregated bathrooms, that such policy (a) satisfies intermediate scrutiny and (b) does not discriminate against transgender persons). Indeed, a judge from this very District (sitting by designation elsewhere) held just this month that Oklahoma's refusal to amend birth certificates to reflect gender identity does not violate the Fourteenth Amendment. *Fowler v. Stitt*, No. 22-cv-115-JWB-SH, 2023 WL 4010694, at *8–24 (N.D. Okla. June 8, 2023) (Broomes, J.).

In short, the legal underpinning of the Consent Judgment has eroded in the intervening four years. This shift in the caselaw is an additional reason to modify the judgment.

2. *The Requested Modification Is Appropriately Limited to Those Portions of the Judgment that Are in Direct Conflict with SB 180.*

Given the intervening legal changes just discussed, the Court should amend the Consent Judgment to remove the portions with prospective application—i.e., decretal paragraphs 2, 3, and 5 (Consent J. 3–4).

"Once a moving party has met its burden of establishing either a change in fact or in law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 506 U.S. at 391. Modifications based on new legal circumstances must be limited to those portions of the judgment that have a prospective effect. *See* Rule 60(b)(5); *United States v. Melot*, 712 F. App'x 719, 720–21 (10th Cir. 2017).

Here, the Consent Judgment has continuing, prospective effects. Decretal paragraphs 2 and 3 permanently require Defendants to allow individuals to alter their birth certificates to reflect felt gender identity. (Consent J. 3.) And decretal paragraph 5 binds not just Defendants themselves, but "any successors charged with enforcing laws regarding birth certificates." (*Id.* at 4.) These are the only portions of the judgment that directly conflict with SB 180, and they are the only portions of the judgment that Defendants ask the Court to modify. Consequently, Defendants' request is suitably tailored to the changed circumstances that authorize modifying the Consent Judgment. The Court should therefore grant that request.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for relief from the Consent Judgment by amending said judgment to remove the portions with prospective application (i.e., decretal paragraphs 2, 3, and 5).

Respectfully submitted this 23rd day of June, 2023.

KRIS W. KOBACH
Attorney General of Kansas

s/ Daniel E. Burrows
Daniel E. Burrows
Bar Number 30009
Chief Deputy Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
Telephone: (785) 368-8435
Fax: (785) 296-3131
Email: daniel.burrows@ag.ks.gov