## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NYLA FOSTER,<br>LUC BENSIMON,<br>JESSICA HICKLIN,<br>C.K., and<br>KANSAS STATEWIDE<br>   TRANSGENDER PROJECT,<br><br>    Plaintiffs,<br><br>       v.<br><br>JANET STANEK, in her official capacity<br>  as Secretary of the Kansas Department of<br>  Health and Environment,<br>KAY HAUG, in her official capacity as<br>  State Registrar for the State of Kansas,<br>  and<br>JASON MATHEWSON, in his official<br>  capacity as Director of Vital Statistics for<br>  the State of Kansas,<br><br>    Defendants. | Case No. 2:18-cv-02552-DDC-KGG |

**Brief of *Amicus Curiae* Kansas Governor Laura Kelly**

Kansas Governor Laura Kelly, by and through her undersigned counsel, submits the following *amicus* brief.

**I.  Introduction**

Senate Bill 180 of the Kansas 2023 Legislative Session is discriminatory. And unfortunately, so too is the Attorney General's advisory interpretation of it. Section 1(a) of the bill provides restrictive definitions of "male," "female," and other gendered terms. The Kansas Reflector reported:

> The model legislation for SB 180 comes from Independent Women's Voices, a far-right group that has a long history of opposing women's rights, including the Equal Rights Amendment and equal pay.

> The group introduced the "women's bill of rights" in 2022 as a way to counteract the spread of "transgender ideology," a phrase used by hate groups in an attempt to promote fear of transgender people.  The model legislation was part of the group's multifaceted campaign against the transgender community.
>
> Kansas legislators initially debated a nearly identical version of the IWF bill at the beginning of the 2023 legislative session, including a section that stated men are "on average, bigger, stronger and faster than females."

Rachel Mipro, '*What is a woman?' Here's how a new Kansas anti-trans law skews the meaning of gender and sex*, Kansas Reflector (July 5, 2023, 2:17 PM), https://kansasreflector.com/2023/07/05/what-is-a-woman-heres-how-a-new-kansas-anti-trans-law-skews-the-meaning-of-gender-and-sex/.

While the Kansas legislature's role is to make law, it cannot make up facts. Scientific evidence supports the recognition of transgender and gender diverse Kansans.  *AMA strengthens its policy on protecting access to gender-affirming care*, Endocrine Society (June 12, 2023), https://www.endocrine.org/news-and-advocacy/news-room/2023/ama-gender-affirming-care. *See also Guidelines for Psychological Practice with Transgender and Gender Nonconforming People* (December 2015), https://www.apa.org/practice/guidelines/transgender.pdf.

Ideological differences aside, the issue here is with the Attorney General's reading of section 1(c) of Senate Bill 180.  As the Attorney General reads it, Senate Bill 180 attacks transgender individuals by singling them out for separate treatment in the provision of state government services because according to the Attorney General, "it is impossible to comply with the Consent Judgment and SB 180."  Att'y Gen.'s Memo in Support of Motion for Relief, p.2, ECF No. 37.  The Consent Judgment was agreed to by the parties and approved by this Court four years ago to address the fact that at that time, Kansas's birth certificate policy was discriminatory.  The Attorney General at that time declined to represent the Kansas Department

of Health and Environment (KDHE) in the matter, pointing out in their response to KDHE's request for representation that the impending change in administration could lead to a change in the birth certificate policy." Letter from Derek Schmidt, Att'y Gen. of Kan., to Darian Dernovish, Kan. Dept. of Health and Env't (Oct. 19, 2018) (on file with Chief Counsel, Office of the Gov.).  The Attorney General was not involved in the representation or settlement of this matter in 2019, and now four years later, pursuant to Kansas Statute 75-702, the Attorney General has entered an appearance for Officials of the Kansas Department of Health and Environment.  This belated change in representation comes with a change in position, contrary to KDHE's understanding of the effect of Senate Bill 180 on their operations.  Governor Laura Kelly, Response to SB180 (June 26, 2023) (transcript available at https://www.wibw.com/2023/06/29/gov-kelly-ag-kobach-spar-over-new-transgender-law-days-ahead-taking-effect/) ("While my administration and the Attorney General's Office have had many conversations about the law, KDHE and KDOR disagree about its impacts on their operations and will instead keep in place their policies regarding gender markers on birth certificates and driver's licenses.").

      Unfortunately, Senate Bill 180 does not fix the discrimination in the birth certificate policy that led to the Consent Judgment. Senate Bill 180, at least according to the Attorney General's reading of it, makes the discrimination worse, not better.  Senate Bill 180 is not a changed circumstance justifying relief from the Consent Judgment in this case; rather, it represents a willful failure of the Kansas Legislature to protect the rights of Kansans, which of course, includes transgender Kansans.

      Unlike the Attorney General, Governor Kelly does not read Senate Bill 180 at odds with the Consent Judgment.  As explained in this brief, Section 1(c) is a discrete point in time

recordkeeping requirement that can be complied with while also respecting the rights of transgender Kansans as enforced through the Consent Judgment in this case.

## II. Governor's Interest in this Matter

Governor Kelly is vested with the supreme executive power of the State of Kansas, and she is responsible for enforcement of the laws of Kansas. Kan. Const. art. 1, § 3. Governor Kelly is fulfilling her responsibility by enforcing Senate Bill 180 consistent with the Consent Judgment. *See generally* Consent Judgment, ECF No. 33. The Governor is the head of the executive branch in Kansas, which includes as a cabinet agency the Kansas Department of Health and Environment, whose officials are Defendants in this matter, including Defendant Secretary Stanek who serves at the pleasure of the Governor. Kan. Stat. Ann. § 75-5601. The Governor has directed her agencies to follow the law in accordance with the advice of agency counsels. *See supra* Governor Laura Kelly, Response to SB180.

As a constitutional officer and head of the executive branch, the Governor respects that authoritative interpretations of the law come from the judiciary. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 52 687, P.2d 622, 630 (1984). Accordingly, until there is an authoritative ruling on Senate Bill 180's legal impact, the Governor will continue to advance her interpretation of Senate Bill 180 that: 1) is consistent with the plain text of the statute; 2) complies with the Consent Judgment; and 3) serves the interest of Kansans.

Respectfully, and as explained herein, *amicus curiae* Kansas Governor Laura Kelly has lawfully interpreted Senate Bill 180 in harmony with the Consent Judgment in this case, and she urges this Court to adopt a similar reading as would obviate any need for relief from the Consent Judgment.

### III.     Background on Senate Bill 180

In the 2023 Kansas legislative session, the Kansas House and Senate passed Senate Bill 180, referred to as the Women's Bill of Rights. The bill was presented to the Governor's Office for signature on April 14, 2023. *Kansas Senate Bill 180*, LegiScan, https://legiscan.com/KS/votes/SB180/2023 (last visited July 5, 2023). On April 20, 2023, Governor Kelly, under Article 2, § 14(a) of the Kansas Constitution, vetoed Senate Bill 180. Gubernatorial Statement on Vetoing Senate Bill 26, Senate Bill 180, Senate Bill 228, and S. Sub for House Bill 2138, (Apr. 20, 2023), http://www.kslegislature.org/li/b2023_24/measures/documents/sb180_enrolled.pdf. The Governor's veto was overridden by the Kansas Senate on April 26, 2023, and then overridden by the Kansas House on April 27. *Supra Kansas Senate Bill 180.* Pursuant to Kansas Constitution Article 2, §14, Senate Bill 180 became law, effective after its publication in the Kansas statute book on July 1, 2023. 2023 Kan. Sess. Laws 1230.

Senate Bill 180 consists of two sections. The first section contains three subsections (a)-(c), and the second section simply provides that the law shall become effective after publication in the Kansas statute book, which occurred on July 1, 2023.

Subsections (a)-(c) of section 1 are a nearly verbatim regurgitation of model legislation from three Washington, D.C. organizations: the Independent Women's Voice, the Independent Women's Law Center, and the Women's Liberation Front (WOLF). *Women's Bill of Rights Model Legislation*, Model Legislation, https://womensbillofrights.com/wp-content/uploads/2022/04/womens-bill-of-rights.pdf (last visited July 6, 2023). This model legislation consists of seven "whereas" clauses leading to nine affirmations. *Id.*

The first six affirmations very closely track sections 1(a)(1)-(6) of Senate Bill 180.

Affirmations 7 and 8 are amalgamated into section 1(b) of Senate Bill 180. And Affirmation 9 is section 1(c) of Senate Bill 180.  As an example of how this model legislation was adopted nearly wholesale into Senate Bill 180, compare Affirmation 9 of this model legislation, which reads:

> Any public school or school district and any federal/state/local agency, department, or office that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data shall identify each individual who is part of the collected data set as either male or female at birth.

with section 1(c) of Senate Bill 180, which reads:

> Any school district, or public school thereof, and any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data shall identify each individual who is part of the collected data set as either male or female at birth.

Senate Bill 180 was not born of thoughtful deliberation or responses to the needs of Kansans. Rather, the Kansas Legislature copy-and-pasted intentionally discriminatory legislation from outside interest groups into Senate Bill 180.

Why does this matter? Because Senate Bill 180 is far from the definitive legislation required to support modification of the Consent Judgement. We agree with the Attorney General – "the agency is bound to execute the law as written."  Att'y Gen.'s Memo in Support of Motion for Relief, p. 4, ECF No. 37.  Meaning the agency is bound by the plain language of Senate Bill 180. Contrary to the Attorney General's conclusory statement that Senate Bill 180 creates a legal impossibility, Senate Bill 180, by its plain text, can easily be interpreted in harmony with the Consent Judgment.

**IV.  The Attorney General has not Carried his Burden to Show Relief from the Consent Judgment is Warranted.**

The Attorney General acknowledges he bears the burden to show "a significant change

either in factual conditions or in law warrants revision of the decree." *Id*. at p. 3 (quoting *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018)). Here, there is no "significant change" in the factual conditions because Senate Bill 180 can and should be read in harmony with the Consent Judgment, contrary to the Attorney General's claim of impossibility; and 2) there is no "significant change" in the law – no judicial decision controlling on this Court that would require relief from the Consent Judgment.

      **a. Senate Bill 180 can be Read in Harmony with the Consent Judgment**

The Attorney General's broad interpretation of Senate Bill 180 and characterization of a person's true sex as "claimed 'gender identity'" is nothing but a political grandstanding that promotes discrimination and violence against the transgender community. *Compare* Att'y Gen.'s Memo in Support of Motion for Relief, p. 2, *with Advancing health equity: a guide to language, narrative and concepts*, American Medical Association, Association of American Medical Colleges (2021), https://www.ama-assn.org/system/files/ama-aamc-equity-guide.pdf, *and* "*I Just Try to Make It Home Safe", Violence and the Human Rights of Transgender People in the United States*, Human Rights Watch (November 18, 2021), https://www.hrw.org/report/2021/11/18/i-just-try-make-it-home-safe/violence-and-human-rights-transgender-people-united.

In his Brief in Support of Motion for Relief from Judgment, the Attorney General writes:

> [i]t is impossible for Defendants to comply with both SB 180 and the Consent Judgment. The Consent Judgment requires defendants to issue birth certificates that state a person's sex as something other than the one he or she was born into; section 1(c) of the bill prohibits this practice. That is enough to warrant modification.

Att'y Gen.'s Memo in Support of Motion for Relief, p. 3, ECF No. 37.

But this conclusory statement is not bolstered by any analysis of how the text of section 1(c) of the bill prohibits Defendants from issuing a birth certificate consistent with the Consent Judgment. A conclusory statement of impossibility is not enough for the Attorney General to meet the burden of showing "significant change" in factual conditions warranting modification of the Consent Judgment. "A movant may establish that changed factual circumstances warrant modification when (i) the changed circumstances 'make compliance with the decree substantially more onerous,' (ii) a 'decree proves to be unworkable because of unforeseen obstacles,' or (iii) 'enforcement of the decree without modification would be detrimental to the public interest.'" *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1201 (10th Cir. 2018) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384-85, 112 S. Ct. 748, 760 (1992)). As discussed herein, the passage of Senate Bill 180 does not create a "significant change" that would make compliance with the Consent Judgment substantially more onerous, unworkable due to unforeseen obstacles, nor is it contrary to public interest because Senate Bill 180 can be read in harmony with the Consent Judgment. Indeed, the public interest in permitting transgender Kansans to continue to obtain drivers' licenses matching their gender identity weighs in favor of not modifying the Consent Judgment.

Some clarity on the Attorney General's position can be found in his Attorney General Opinion No. 2023-002, issued June 26, 2023, regarding applicability of Senate Bill 180 to various state agencies, and in which he concluded:

> Section 1(c) of SB 180 requires that the Kansas Department of Health and Environment (KDHE) list a person's biological sex at birth on the person's birth certificate. This is an ongoing requirement, so if KDHE has previously modified a birth certificate to list a sex other than the person's biological sex at birth, SB 180 requires KDHE to restore the birth certificate to its original form.

Women's Bill of rights, 2023-002 Op. Atty. Gen. 1 (2023), https://ag.ks.gov/media-center/ag-

opinions.

      Although the Attorney General is obligated to give his opinion in writing, when requested by certain parties, the Attorney General's advisory opinion is an executive, not a judicial power. The Kansas Supreme Court has "long held that '[t]he construction placed upon a statute by the opinion of an attorney general is neither conclusive nor binding on the court, and in circumstances where such an opinion is without authoritative legal support, it should not be approved or followed.'"  *Perry v. Bd. of Cnty. Comm'rs of Cnty. of Franklin*, 281 Kan. 801, 812–13 (2006) (quoting *Greenwood v. Estes, Savings & Loan Comm'r*, 210 Kan. 655, Syl. ¶ 3, 504 P.2d 206 (1972)).  *See also State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 875–76, 179 P.3d 366, 371 (2008); *see also Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.*, 266 Kan. 293, 299 (1998) (although opinions by the Attorney General are persuasive, they are not binding on the courts).  The Attorney General does not speak for the judiciary, and his opinion is just that – an opinion.

      The Governor believes the Attorney General has misread Section 1(c) of Senate Bill 180 to create an "ongoing requirement" that Defendants identify individuals forever in a certain way. The plain text of Senate Bill 180 does not support this reading.  Further, no Kansas state court has made such a finding.  Until a Kansas court makes such a finding, the Governor believes the laws of this state can be enforced without discrimination against transgender individuals.

      The Attorney General's conclusion is incorrect because such an impossibility might exist if the word "only" were read into section 1 (c) of Senate Bill 180, 2023 Session Laws, Ch. 84, as follows:

> Any school district, or public school thereof, and any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with

>anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data shall *only* identify each individual who is part of the collected data set as either male or female at birth.

But section (c) of Senate Bill 180 does not contain the word "only," and thus, there is nothing preventing any state data set from BOTH identifying an individual as male or female at birth and also identifying them accurately later – that is, to reflect their true sex, consistent with their gender identity, through subsequent amendment of the birth certificate.

At the time an individual is born in Kansas, a birth record is created. And some data from this birth record is used to create a birth certificate, issued to individuals identifying their sex or intersex status at the time of birth. At this point, compliance with Senate Bill 180 is complete. The plain text of the law refers to a collected data set – that is, a discrete point in time, not an ongoing requirement for maintaining data a certain way. Thus, later when an individual may know their true gender identity and wish to get an updated birth certificate consistent with their gender identity, they may do so pursuant to the terms of the Consent Judgment in this case. Again, at the time the person was born in Kansas, they were identified as male, female, or intersex in their birth record and initial birth certificate in compliance with Senate Bill 180. Senate Bill 180 does not prohibit subsequent reidentification of a different sex marker on a copy of a birth certificate because the bill does not in its plain language impose a requirement that a person "only" and "forever" be identified a certain way. For Kansas courts, "the fundamental rule of statutory interpretation" is that "the intent of the Legislature governs if that intent can be ascertained." *Matter of Westar Energy, Inc.*, 311 Kan. 320, 328 (2020). "In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning." *Id.* Kansas state courts will not read words into statutes that are not there. *See, e.g., Doty v. Frontier Communs., Inc.*, 272 Kan. 880, 884 (2001); *Nauheim v. City*

*of Topeka*, 309 Kan. 145, 149 (2019); *Bruce v. Kelly,* 316 Kan. 218, 224 (2022).

### b. There is no "Significant Change" in Controlling Law Warranting Relief from the Consent Judgment

On the third floor of the Kansas Statehouse, there is a *Brown v. Board of Education* mural on the wall leading to the old Kansas Supreme Court courtroom. Michael Young, Brown v. Board Mural, *at* Kansas State Capitol Third Level (2018), https://www.kshs.org/p/kansas-state-capitol-online-tour-brown-v-board-mural/20230 (last visited July 6, 2023). The mural "depict[s] the legacy of the 1954 landmark U.S. Supreme Court desegregation case, with roots in Topeka." *Id.* On the courthouse depicted in the mural is the phrase "Equal Justice Under Law." The command is simple, just as is the Fourteenth Amendment's command that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which the Supreme Court recognizes "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). All Kansans—whether male or female, cisgender or transgender— have a right to equal treatment in the provision of state government services. This includes providing copies of vital records such as birth certificates. That is, someone needing a birth certificate should not be treated differently because of the value judgments of others.

The Governor believes Plaintiffs will adequately respond to the legal arguments concerning the Attorney General's claim of a changed legal landscape. So, the Governor will simply proffer three points for this Court's consideration.

1. The Fourteenth Amendment – and its mandate for equal treatment – has not changed since this Court's approval of the parties' Consent Judgment in 2019.

2. The mural of *Brown v. Board of Education* on the third floor of the Kansas Statehouse is indicative of a hard truth: history is a terrible barometer of the rights that should be

afforded minority and underrepresented groups. The Attorney General cites to non-controlling decisions such as Judge Broomes's decision from the Northern District of Oklahoma in support a claim of significant change in the law. *Fowler v. Stitt*, No. 22-cv-115-JWB-SH, 2023 WL 4010694, at 8–24 (N.D. Okla. June 8, 2023). But the Governor agrees with, and respectfully asks this Court to consider, the warning issued by Justice Stevens in his dissent in *McDonald v. City of Chicago, Ill., 561 U.S. 742, 910 (2010):*

> Not only can historical views be less than completely clear or informative, but they can also be wrong. Some notions that many Americans deeply believed to be true, at one time, turned out not to be true. Some practices that many Americans believed to be consistent with the Constitution's guarantees of liberty and equality, at one time, turned out to be inconsistent with them. The fact that we have a written Constitution does not consign this Nation to a static legal existence. Although we should always "pa[y] a decent regard to the opinions of former times," it is "not the glory of the people of America" to have "suffered a blind veneration for antiquity." The Federalist No. 14, pp. 99, 104 (C. Rossiter ed. 1961) (J. Madison). **It is not the role of federal judges to be amateur historians**. (emphasis added).

> That some individuals believe certain Kansans are not entitled to equal treatment and services does not mean that they are not entitled to equal treatment under the law.

3. The Attorney General does not cite any controlling case law in this circuit requiring modification of the Consent Judgment. The Attorney says "other courts have begun to address the transgender-birth-certificate issue. And several judges have determined that policies prohibiting such changes do not offend the Constitution." Att'y Gen.'s Memo in Support of Motion for Relief, p. 5, ECF No. 37. None of these cases are from the 10th Circuit or this Court or the State of Kansas. Further, some courts have determined policies prohibiting such changes do offend the Constitution. *See generally F.V. v. Baron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020).

V.      **Conclusion**

This case is about Kansas continuing to protect the constitutional rights of transgender individuals from discrimination. Four years ago, this Court and the parties recognized that Kansas's birth certificate policy that gave rise to this lawsuit violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. Now, the Kansas Attorney General, new in office and not previously having been involved with this case, seeks relief from this Court from the parties' Consent Judgment based on alleged changed circumstances.  Att'y Gen.'s Motion for Relief from Judgment, p. 2., ECF No. 36.

Despite the Attorney General's claims, there are no changed circumstances.  The first and most significant changed circumstance was supposedly the passage of Senate Bill 180 of the 2023 Kansas Legislature.  Sess. Laws 1230.  However, not only did the legislation not address the concerns in the Consent Judgment and rectify discrimination that existed in Kansas's birth certificate policy at issue in this case, the legislation actually exacerbated the discrimination, according to the Attorney General's interpretation. It is hard to fathom how legislation that made the discrimination worse, not better, warrants relief from the Consent Judgment. The second alleged changed circumstance is that case law underlying the Consent Judgment has eroded – yet, no controlling cases are cited for this proposition. Contrary to the Attorney General's assertion, Senate Bill 180 does not make it impossible to comply with the Consent Judgment, and until controlling legal authority says otherwise, Governor Kelly will continue to enforce Senate Bill 180 consistent with the Consent Judgment.