**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NYLA FOSTER, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 2:18-cv-02552-DDC-KGG |
| JANET STANEK, et al., | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT**

"The right to identify our own existence lies at the heart of one's humanity." *Arroyo Gonzalez v. Rossello Nevares*, 305 F.Supp.3d 327, 334 (D.P.R. 2018). Yet, more than four years after this Court ordered, adjudged, and decreed that "Kansas statutes and regulations … which prohibit[] transgender people born in Kansas from obtaining birth certificates reflecting their true sex, consistent with their gender identity, violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution," *see* Doc. 33 (Consent Judgment), at 2-3, ¶ 1, Attorney General Kris Kobach seeks to vacate operative paragraphs 2, 3, and 5 of the Consent Judgment by seeking relief pursuant to Federal Rule of Civil Procedure 60(b)(5). *See* Doc. 36, at ¶ 1.[1] The Attorney General argues such relief is necessary "because of changed circumstances that could not have been anticipated when the judgment was initially entered: namely, a new statute that requires Defendants to act in a way that would violate said judgment." Doc. 37 at 1. Nothing could be further from the truth, however.

---

[1] Whether the Attorney General represents the interests of Defendants, as opposed to his own, is an open question. *See* Doc. 39, at 2. Accordingly, Plaintiffs will ascribe the arguments set forth in the Motion to the Attorney General.

USA.607896569.1/JL5

The Consent Judgment issued by this Court on June 21, 2019, which decrees Kansas statutes like SB 180 (if interpreted as the Attorney General argues) to "violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution," explicitly envisioned the scenario giving rise to the instant motion by decreeing that "[t]he obligations and th[e] Consent Judgment apply to and are binding upon the Defendants and any successors charged with enforcing laws regarding birth certificates." Doc. 33, at 2-3, ¶ 1; *id.*, at 4, ¶ 5. Such language was presciently necessary because, as is the case now, those intent on using the State's powers to perpetuate discrimination against vulnerable and discrete minorities like transgender people do not give up easily.

But not only is the Attorney General's Motion facially insufficient to relieve Defendants from their obligations under the Consent Judgment, even if it were not, the Attorney General has failed to meet his extraordinary burden under Rule 60(b).

Accordingly, and for the following reasons, the Court should deny the Attorney General's Motion for Relief from Judgment (Doc. 36).

## FACTUAL BACKGROUND

On October 15, 2018, Plaintiffs Nyla Foster, Luc Bensimon, Jessica Hicklin, C.K., and Kansas Statewide Transgender Education Project filed a Complaint for Declaratory and Injunctive Relief against Defendants alleging that Kansas's policy categorically barring transgender people from obtaining birth certificates that reflect their true sex, consistent with their gender identity, violated the United States Constitution's guarantees to equal dignity, equal protection of the laws, liberty, privacy, freedom of expression, and freedom from compelled speech. Compl., Doc. 1.

On June 21, 2019, the Court entered a Consent Judgment, after prolonged negotiations between the parties, decreeing that Kansas's policy violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. *See* Consent Judgment, Doc. 33.

On April 27, 2023, the Kansas legislature enacted Senate Bill 180 ("SB 180") into law over Governor Laura Kelly's veto. SB 180 went into effect on July 1, 2023. SB 180 states, in relevant part, that "any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data shall identify each individual who is part of the collected data set as either male or female at birth."

On June 23, 2023, the Attorney General moved for relief from the Consent Judgment in this case, alleging that SB 180 "makes prospective application of the Consent Judgment inequitable." Doc. 37, at 1. And, on June 26, 2023, the Attorney General issued an advisory opinion that "Section (1)(c) of SB 180 indicates an ongoing requirement—the 'data set' maintained by the agency 'shall identify each individual' who is part of that data set as male or female at birth," and that "if KDHE has previously modified a birth certificate to list a sex different than the individual's sex at birth, SB 180 requires KDHE to change the birth certificate back to reflect the individual's sex at birth." Kan. Att'y Gen. Op. 2023-2, at 6.

The Attorney General's position conflicts with that of the administration in which Defendants serve, however. On June 29, 2023, Governor Kelly issued the following statement:

> I have directed the agencies to follow SB 180 according to their legal counsel's interpretation of the law. While my administration and the Attorney General's Office have had many conversations about the law, KDHE and KDOR disagree about its impacts on their operations and will instead keep in place their policies regarding gender markers on birth certificates and driver's licenses.

Shayndel Jones, Gov. Kelly, AG Kobach spar over new transgender law days ahead of taking effect, 13 WIBW (June 29, 2023), https://tinyurl.com/36ueewav (last accessed July 14, 2023).

## LEGAL STANDARD

"[R]elief under Rule 60(b)(5) is an extraordinary remedy limited to exceptional circumstances." *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 446 (10th Cir. 2023) (cleaned up).  As such, "the party seeking vacatur has the burden of establishing it is entitled to relief." *Id.*

"The party seeking modification of a consent decree bears the burden of showing that a significant change either in factual conditions or in law warrants revision of the decree." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018) (internal quotes omitted).  "A movant may establish that changed factual circumstances warrant modification when (i) the changed circumstances 'make compliance with the decree substantially more onerous,' (ii) a 'decree proves to be unworkable because of unforeseen obstacles,' or (iii) 'enforcement of the decree without modification would be detrimental to the public interest.'" *Id.* at 1201 (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384-85 (1992)).

Here, the Attorney General seeks relief solely on the basis that "applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5); *see* Doc. 37, at 1.  "[B]ecause every Rule 60(b) motion by definition seeks equitable relief from the court, a court may consider whether the moving party has acted equitably." *Compañía de Inversiones Mercantiles*, 58 F.4th at 446 (citing *In re Gledhill*, 76 F.3d 1070, 1078 (10th Cir. 1996), 12 Moore's Federal Practice, § 60.22 (Matthew Bender 3d Ed.), and *Amoco Oil Co. v. U.S. E.P.A.*, 231 F.3d 694, 698-99 (10th Cir. 2000)).

In addition, the court "'should consider whether the motion was made within a reasonable time, whether the movant acted equitably, and whether vacatur would strike an appropriate balance between serving the ends of justice and preserving the finality of judgments.'" *Compañía de*

*Inversiones Mercantiles*, 58 F.4th at 446 (quoting *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 186 (2d Cir. 2017)).

Finally, to qualify for relief pursuant to Rule 60(b)(5), a movant must establish an absence of the ongoing violation of federal law and a future commitment to remain in compliance with federal law. *Jackson*, 880 F.3d at 1203.

## ARGUMENT

### I.    Plaintiffs Have a Judicially Cognizable Interest in Ensuring Compliance with the Consent Judgment.

It is well settled that "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712 (2010). Here, through the Consent Judgment, Plaintiffs acquired a right to have the State of Kansas to steer clear of any perpetuation of the discriminatory birth certificate policies prohibiting them from obtaining a birth certificate consistent with who they are that it had once sponsored. *See Allen v. Wright*, 468 U.S. 737, 763 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014). This acquired interest is "judicially cognizable because it was a personal interest, created by law, in having the State refrain from taking specific actions." *Id.* And a consent judgment "is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo*, 502 U.S. at 378. "Having obtained a final judgment granting relief on their claims," Plaintiffs have "standing to seek its vindication." *Salazar*, 559 U.S. at 712.[2]

---

[2] Plaintiff Kansas Statewide Transgender Education Project ceased operations in October 2019 following the death of its founder – transgender advocate and visionary Stephanie Mott – and months after the entry of the Consent Judgment in this case on June 21, 2019. *See* C.J. Janovy, *One year later, this is the legacy of Kansas transgender activist Stephanie Mott*, Reports from a place like home (Mar. 7, 2020), https://tinyurl.com/jn48au4f (last accessed July 14, 2023).

## II.     The Attorney General's Motion Is Facially Insufficient.

Through his Motion, the Attorney General seeks to modify/vacate only "decretal paragraphs 2, 3, and 5." Doc. 36, at ¶ 1. However, decretal paragraph 1 explicitly declares that "Kansas statutes and regulations … which prohibit[] transgender people born in Kansas from obtaining birth certificates reflecting their true sex, consistent with their gender identity, violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Doc. 33 (Consent Judgment), at 2-3, ¶ 1. By failing to seek relief from decretal paragraph 1, the Attorney General has thus failed to seek relief from the Consent Judgment that would permit Defendants to implement SB 180 (in the way envisioned by the Attorney General) in a manner that would not violate the Consent Judgment.

"It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional." *Ex parte Young*, 209 U.S. 123, 159 (1908). Thus, even if the Court were to accept the Attorney General's views about how SB 180 should be implemented (which, as outlined below, it should not), the relief requested by the Attorney General is insufficient to permit Defendants to implement SB 180 in the manner advocated by the Attorney General.

## III.     The Enactment of SB 180 Is Not a Significant Changed Circumstance That Warrants Relief Under Rule 60(B)(5).

The Attorney General seeks modification of the Consent Judgment not because of any change in federal law, such as intervening binding precedent from the Tenth Circuit or the Supreme Court, or an amendment to the United States Constitution, but rather based on the enactment of SB 180 by the Kansas legislature. *See* Doc. 37, at 4, fn. 1 ("Defendants believe the existence of SB 180 is sufficient to justify modification of the consent judgment; they need not show that the caselaw has changed as well."). But the enactment of SB 180 does not constitute the type of

significant change in circumstances that warrants the extraordinary remedy of vacating aspects of the Consent Judgment.  Indeed, the Fourteenth Amendment, adopted on July 9, 1868, has not been modified in 155 years, ensuring that its promise to liberty and equal protection of the laws remain in place.  *See* U.S. Const. amend. XIV.

The Attorney General misleadingly quotes *Rufo* by stating that, "'A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become [legally] impermissible . . . ." Doc. 37, at 3 (alternations in Attorney General's Motion). The Attorney General conveniently leaves out, however, the ending of that sentence, which reveals what the Supreme Court actually meant by "legally impermissible."  Specifically, the Supreme Court stated: "A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible ***under federal law***." Rufo 502 U.S. at 388 (emphasis added).  Thus, it is a change in federal law—not state law— that is considered a sufficient significant change in circumstances to warrant a modification under Rule 60(b)(5).[3]

Nonetheless, the Attorney General argues that the enactment of SB 180 makes compliance with the Consent Judgment "legally impermissible."  But the mere enactment of a state law resurrecting the very Policy found to be unconstitutional under the Consent Judgment does not make compliance with the Consent Judgment legally impermissible, rather it shows that the Consent Judgment is operating just as it was intended to operate:  by preventing the perpetuation of an unconstitutional policy violating the rights of transgender people born in Kansas.

---

[3] Citing to *Rufo* and *Salazar*, the Attorney General argues that a change in statutory law is sufficient and that he need not have to show a change in decisional case law.  The Attorney General ignores that both *Rufo* and *Salazar* refer to changes in *federal law*.  In *Salazar*, the statute in question was one passed by Congress, and *Rufo* explicitly refers to federal law.

If one were to accept the Attorney General's argument, governmental actors dead set on discriminating against and violating the rights of vulnerable minorities could just evade federal judgments vindicating constitutional rights by reenacting the very policies found to be in violation of our Constitution.  Is it Attorney General Kobach's position that the judgment of this Court in *Marie v. Moser*, No. 14-2518-DDC-TJJ (D. Kan. July 26, 2016) (ECF No. 141), decreeing "Article 15, § 16 of the Kansas Constitution, K.S.A. § 23-2501, K.S.A. § 23-2508, and any other Kansas statute, law, policy, or practice that prohibits issuing marriage licenses to same-sex couples in Kansas or recognizing such marriages on the same terms and conditions that apply to opposite-sex couples are declared void and in contravention of the Fourteenth Amendment to the United States Constitution," should be vacated upon the enactment of a new statute by the Kansas legislature prohibiting same-sex couples in Kansas from marrying?  Or is it Attorney General Kobach's position that the judgment in *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 495 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955), may be vacated simply because the Kansas legislature has enacted a law instituting separate educational facilities based on race?  The answer is clearly no.

Lest there be any doubt, "the [United States] Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, anything in the Constitution or Laws of any State to the contrary notwithstanding." *Testa v. Katt*, 330 U.S. 386, 391 (1947) (cleaned up).  In other words, a "[s]tate-law prohibition against compliance with the District Court's decree cannot survive the command of the Supremacy Clause of the United States Constitution." *Washington v. Washington State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695, *modified sub nom. Washington v. United States*, 444 U.S. 816 (1979).

Simply put, the zealous desire of some state actors to perpetuate the very discriminatory policies this Court has already found to be unconstitutional is not and cannot be a sufficient significant change in circumstances to warrant relief from the Consent Judgment.

## IV.   Senate Bill 180 Need Not Conflict with the Consent Judgment.

Not only does the enactment of SB 180 not constitute a significant change in circumstance warranting modification of the Consent Judgment, but SB 180 need not be interpreted in a way that conflicts with the Consent Judgment and the United States Constitution.

While the Attorney General would like SB 180 to be implemented in a way that discriminates against transgender persons in Kansas, that need not be case.  Section 1 (c) of SB 180, 2023 Session Laws, Ch. 84, states that:

> Any school district, or public school thereof, and any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data shall identify each individual who is part of the collected data set as either male or female at birth.

As Governor Kelly discusses in her brief, the Attorney General's representation that such language conflicts with the Consent Judgment only arises if the word "only" is read into section 1(c) of SB 180, such that it reads that "… shall *only* identify each individual who is part of the collected data set as either male or female at birth."  Gov. Kelly *Amicus* Br., Doc. 39-1, at 9-10.

What is more, the information used for public health surveillance and research comes from Kansas's "statistical file," and the information shared for this purpose is not a person's birth certificate.  Indeed, "[t]he KDHE Bureau of Epidemiology and Public Health Informatics (BEPHI) maintains the Kansas civil registration system through the Office of Vital Statistics (OVS)" and "[a]ll vital events that occur in Kansas are reported to OVS."  Kansas Dep't of Health and Env't, *Preliminary Birth Report Kansas, 2021* (May 2022), at 3, https://tinyurl.com/9u72u3d9; *see also* Kansas Dep't of Health and Env't, *Natality Report by Racial and Ethnic Population Groups,*

*Kansas, 2021* (Feb. 2023), at 5, https://tinyurl.com/2xw2fd9f ("Data in this report are based on Kansas resident birth records provided to the Bureau of Epidemiology and Public Health Informatics Office of Vital Statistics by hospitals and health care providers in Kansas").  Some of this data includes race, ethnicity, maternal age, education level, marital status, adequacy of prenatal care, primary pay source for delivery, WIC service utilization, gestational age, and weight of infant at birth.  KDHE, *Natality Report*, *supra*, at 4.  And none of this aforementioned information that is contained within *birth records* appears on a person's *birth certificate*.

Accordingly, transgender persons can correct the sex designation on their birth certificates without changing the statistical file based on *birth records*.  In other words, a person may *concurrently* be identified by their sex assigned at birth within their birth record/statistical file, consistent with SB 180, and be permitted to correct the sex designation on their birth certificate in manner consistent with their gender identity, in compliance with the Consent Judgment.  In fact, the vast majority of states have an interest in promoting public health research and surveillance and do so while permitting transgender people to correct the sex designation on their birth certificates to be consistent with the gender identity.

Furthermore, the doctrine of constitutional avoidance is a "cardinal principle" of statutory interpretation. *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  It provides that, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001).  Here, given the aforementioned more plausible and natural interpretations of SB 180, the Court should refuse to defer to the Attorney General's nonbinding interpretation of SB 180 which would directly conflict with the Consent Judgment and be in violation of transgender persons' constitutional rights.  This

is particularly the case where the administration interprets SB 180 in a way that does not conflict with the Consent Judgment.  *See* Gov. Kelly's *Amicus* Br., Doc. 39-1, at 4 ("Kansas Governor Laura Kelly has lawfully interpreted Senate Bill 180 in harmony with the Consent Judgment in this case, and she urges this Court to adopt a similar reading as would obviate any need for relief from the Consent Judgment.")

## V.   The Attorney General Points to No Change in Binding Decisional Case Law.

The Attorney General argues that "the underlying caselaw on which the Consent Judgment purports to be based has eroded" by pointing to two non-binding decisions from district courts outside Kansas and a handful of state court decisions.  Doc. 37, at 4.  But not only are none of these decisions binding upon this Court, but the picture presented by the Attorney General is wholly incomplete.  Take the following court decisions omitted by the Attorney General:

In Ohio, in *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020), a federal district court held that the transgender plaintiffs "have a substantive due process right to informational privacy that protects against the forced disclosure of the unchanged sex marker on their birth certificates" and that Ohio's then-birth certificate policy "treat[ed] transgendered people differently than similarly situated Ohioans." *Id.* at 934, 935–36.  Indeed, the court found "although the Court finds that transgender people are a quasi-suspect class entitled to heightened scrutiny protections under the equal protection clause, even under rational basis review Defendants' Policy does not pass constitutional muster." *Id.* at 940.

In Idaho, after the legislature tried to circumvent the federal district court's decision in *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018), two years after it was decided, the district court found that the revised application form and instructions adopted by the defendants based on the

new statute violated the court's injunction.  *See F.V. v. Jeppessen*, No. 1:17-cv-00170-CWD (D. Idaho Aug. 7, 2020) (ECF No. 75).

In North Carolina, a federal district court entered a Consent Judgment permanently enjoining state officials "to provide certified copies of birth certificates to transgender individuals that accurately reflect their sex, consistent with their gender identity, without requiring the individual to provide proof of 'sex reassignment surgery,' unless the individual expresses 'sex reassignment surgery' as the reason for seeking the correction, and without the inclusion of information that would directly or indirectly disclose an individual's transgender status on the face of the birth certificate."  Amended Consent Judgment, *Campos v. Kinsley*, No. 1:21-cv-00880-LCB-JEP (M.D.N.C. June 22, 2022) (ECF No. 30), at 4, ¶ 6.

In Montana, a state trial court found that the plaintiffs challenging a policy restricting transgender people's ability to obtain a birth certificate consistent with their gender identity had "adequately pleaded claims for violations of equal protection, privacy, and due process under the Montana Constitution" and were entitled to a preliminary injunction. *Marquez v. State of Montana*, No. DV 21-873 (Thirteenth Jud. Dist, Yellowstone Cnty. Apr. 21, 2022), https://tinyurl.com/ywbnct52.

In West Virginia, following a federal lawsuit asserting claims like the ones at issue in this case, the state defendants and the plaintiffs entered into a settlement agreement wherein the defendants agreed to "not require transgender individuals to obtain a court order directing a gender marker amendment or amend birth certificates utilizing the strike-through method, revealing sensitive information regarding an individual's transgender status." *Hersom v. Crouch*, No. 2:21-cv-00450 (S.D. W. Va. Filed Oct. 26, 2022) (ECF No. 45-1).

In Alabama, a federal district court held that a state policy prohibiting transgender plaintiffs from obtaining driver's licenses consistent with their gender identity to discriminate on the basis of sex, triggering heightened scrutiny, and that "[t]he State has not risen to meet the obligation that the Equal Protection Clause imposes" and that the policy "is unconstitutional." *Corbitt v. Taylor*, 513 F. Supp. 3d 1309, 1323 (M.D. Ala. 2021).

Moreover, since the entry of the Consent Judgment in this case, multiple courts have found that transgender people constitute a quasi-suspect class and that laws that discriminate on such basis are subject to heightened scrutiny, where it is the state's burden to show it has an exceedingly persuasive justification for such discrimination. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020), as amended (Aug. 28, 2020); *Karnoski v. Trump*, 926 F.3d 1180, 1200 (9th Cir. 2019); *Dekker v. Weida*, No. 4:22CV325-RH-MAF, 2023 WL 4102243, at *12–13 (N.D. Fla. June 21, 2023); *Brandt v. Rutledge*, No. 4:21-CV-00450, 2023 WL 4073727, at *36 (E.D. Ark. June 20, 2023); *Doe v. Ladapo*, No. 4:23CV114-RHMAF, 2023 WL 3833848, at *10 (N.D. Fla. June 6, 2023); *Ray v. McCloud*, 507 F. Supp. 3d 925, 937–38 (S.D. Ohio 2020). And, of course, the Supreme Court has held, albeit in a statutory context, that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1741 (2020).

Simply put, there is ample decisional case law post-dating the Consent Judgment that further supports its foundations. By contrast, the Attorney General points to no authority supporting his argument that non-binding court decisions that, at most, represent a minority view warrant modification of a consent judgment.

## VI.   The Equities Do Not Favor Modification of the Consent Judgment.

Finally, equitable considerations counsel against modifying the Consent Judgment.

***First***, "[m]odifications need to be made in compliance with federal laws and ensure violations of federal law do not persist if the decree is modified." *Jackson*, 880 F.3d at 1200.  Here, the requested modification would violate the rights of transgender people born in Kansas, including Plaintiffs if they necessitated re-issuance of their birth certificates.  For example, the requested modification would violate the right of transgender persons born in Kansas to equal protection, discriminating based on sex and transgender status.  *See*, *e.g.*, *Ray*, 507 F.Supp.3d at 935–40; *F.V.*, 286 F.Supp.3d at 1140–45; *cf. Corbitt*, 513 F.Supp.3d at 1323.  Similarly, it would result in the unconstitutional interference with transgender persons' informational and decision privacy, as well as their right to autonomy.  *See*, *e.g.*, *Ray*, 507 F.Supp.3d at 934; *Arroyo Gonzalez*, 305 F.Supp.3d at 333.  And, moreover, the requested modification would result in the violation of the free speech rights of transgender people born in Kansas.  *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S.Ct. 2239, 2253 (2015); *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 11 (1986); *Wooley v. Maynard*, 430 U.S. 705, 717 (1977).

The relief sought by the Attorney General would impede the Consent Judgment's main objective, protecting the rights of transgender Kansans.  But where the State has not shown it has fulfilled the objects of the decree the terms should be enforced.  *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004).  Indeed, consent decrees have been upheld so they could meet their federal objectives even in the face of factual changes and oppositional state laws. *See*, *e.g.*, *Brown v. Neeb*, 644 F.2d 551, 558 (6th Cir. 1981).

***Second***, transgender people in Kansas have been living with the benefit of the Consent Judgment for over four years.  Transgender Kansans have thus relied on the Consent Judgment for years and the modification of the Consent Judgment would result in material harms to transgender Kansans.  Now, years later, the Attorney General, citing SB 180, seeks to alter what has proven to

be an incredibly successful policy that has permitted transgender Kansans to navigate life as who they are without risking forced disclosure of their transgender status.

*Third*, the relief requested by the Attorney General would run counter to the public interest. Aside from the protection of constitutional rights being always in the public interest, one cannot discount the context in which the relief sought by the Attorney General arises.  To be sure, SB 180 was enacted as part of a campaign by anti-LGBTQ activists to erase the progress made by LGBTQ people over the past decades.  Indeed, approximately 500 bills have been introduced in this legislative session alone targeting LGBTQ people for discrimination, many of these bills specifically targeting transgender people for discrimination and governmental oppression and persecution.  *See* ACLU, Mapping Attacks on LGBTQ Rights in U.S. State Legislatures, https://tinyurl.com/3dw3x2nd (last accessed July 14, 2023).  Modifying the Consent Judgment to facilitate the very policy the Consent Judgment was meant to address would risk a loss of confidence in the courts to protect the rights of politically powerless groups at a time that they are in the crosshairs of scrupulous politicians who treat the lives of transgender people as political pawns.  Such an outcome would undermine confidence in courts' ability to vindicate constitutional rights and harm the public interest writ large.

## CONCLUSION

Permitting transgender Kansans to obtain accurate birth certificates, consistent with their gender identity, remains the main thrust of the Consent Judgment. To vacate the operative portions of the Consent Judgment based on the desire to reinstate the very policy found unconstitutional in the Consent Judgment would "make a mockery of the consent decree."  *Brown*, 644 F.2d at 558.

Plaintiffs respectfully request that the Court deny the Attorney General's Motion for Relief from Judgment (Doc. 36).

Dated this 14th day of July 2023.

Respectfully submitted,

/s/ *James D. Lawrence*
James D. Lawrence (Bar No. KS #22565)
Sarah R. Holdmeyer (Bar No. KS #27584)
BRYAN CAVE LEIGHTON PAISNER LLP
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
t: (816) 374-3200 | f: (816) 374-3300
jdlawrence@bclplaw.com
sarah.holdmeyer@bclplaw.com

Katherine A. Keating*
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
t: (415) 675-3400 | f: (415) 675-3434
katherine.keating@bclplaw.com

 /s/ *Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
        EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
t: (212) 809-8585 | f: (212) 809-0055
ogonzalez-pagan@lambdalegal.org

Kara N. Ingelhart*
LAMBDA LEGAL DEFENSE AND
        EDUCATION FUND, INC.
65 E. Wacker Place, Suite 2000
Chicago, Illinois 60601
t: (312) 663-4413 | f: (312) 663-4307
kingelhart@lambdalegal.org

* *Admitted pro hac vice.*

*Attorneys for Plaintiffs*