IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NYLA FOSTER, et al., | |
| **Plaintiffs,** | |
| v. | **Case No. 18-2552-DDC-KGG** |
| JANET STANEK, in her official capacity as Secretary of the Kansas Department of Health and Environment, et al., | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Sometimes, parties agree to settle a dispute and ask the court to enter a mutually-agreeable consent judgment manifesting their settlement.  But, when a consent judgment remains in force for years, circumstances can change.  Recognizing that possibility, the Federal Rules of Civil Procedure permit parties to ask for relief from a judgment—including a consent judgment—if applying the judgment "prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).

Plaintiffs Nyla Foster, Luc Bensimon, Jessica Hicklin, C.K., and the Kansas Statewide Transgender Education Project[1] filed this lawsuit in 2018.  They alleged that defendants[2] had

---

[1]    In their brief, plaintiffs informed the court that plaintiff Kansas Statewide Transgender Education Project no longer operates because its founder passed away.

[2]    Initially, plaintiffs sued Jeff Andersen, in his official capacity as Secretary of the Kansas Department of Health and Environment; Elizabeth W. Saadi, in her official capacity as State Registrar for the State of Kansas; and Kay Haug, in her official capacity as Director of Vital Statistics for the State of Kansas.  Doc. 1 at 1.  On June 23, 2023, defendants substituted the following persons as defendants, replacing the original defendants:  Janet Stanek, in her official capacity as Secretary of the Kansas Department of Health and Environment, for defendant Andersen; Kay Haug, in her official capacity as State Registrar for the State of Kansas, for defendant Saadi; and Jason Mathewson, in his official capacity as Director of Vital Statistics for the State of Kansas, for defendant Haug.  Doc. 35 at 1–2.

violated their constitutional rights by categorically barring transgender Kansans from acquiring

birth certificates listing their true sex, consistent with their gender identity.  In 2019, defendants

agreed to remedy the violation alleged by plaintiffs, and the parties jointly asked the court to

enter a Consent Judgment encompassing their agreement.  The court adopted the jointly

proposed Consent Judgment, which required defendants to provide transgender Kansans with

birth certificates these Kansans viewed as accurate.

Now, defendants ask the court for relief from that Consent Judgment.  They base their

request on a new Kansas law—Senate Bill 180.  SB 180, effective July 1, 2023, requires all

Kansas birth certificates to identify a person's sex as the one assigned to the person at birth.

Invoking Fed. R. Civ. P. 60(b)(5), defendants have filed a motion seeking relief from the 2019

Consent Judgment because SB 180 conflicts with it.  The court agrees that defendants have

invoked Rule 60(b)(5) properly and, as explained below, grants their Motion for Relief from

Judgment (Doc. 36).

## I.    Background

On October 15, 2018, plaintiffs filed this lawsuit against several state officials.  They

challenged the state's birth certificate policy.  *See* Doc. 1.  Plaintiffs alleged that the "State of

Kansas categorically bar[red] transgender people from obtaining birth certificates that reflect

their true sex, consistent with their gender identity[.]"  *Id.* at 3 (Compl. ¶ 5).  At the time, they

alleged that no "specific statute or regulation prohibit[ed] the correction of the gender marker on

a birth certificate in order to accurately reflect the sex of a transgender person."  *Id.* at 14

(Compl. ¶ 63).  Plaintiffs claimed that the state's policy violated the Equal Protection Clause of

the United States Constitution, violated its Due Process Clause by infringing on substantive

rights to privacy, autonomy, and liberty, and violated the First Amendment by impermissibly

compelling speech.  Doc. 1 at 34–41 (Compl. ¶¶ 173–214).

On June 21, 2019, the parties filed a Joint Motion for Entry of Consent Judgment.  Doc.

31.  As an exhibit in support of their motion, the parties submitted a Proposed Consent

Judgment.  Doc. 32.  Acting on the parties' joint request, the court adopted the parties' Proposed

Consent Judgment and entered it that same day.  Doc. 33.  In relevant part, it provides:

1. Kansas statutes and regulations hereinafter referred to as "Kansas's Birth Certificate Policy", which prohibit[] transgender people born in Kansas from obtaining birth certificates reflecting their true sex, consistent with their gender identity, violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2. Defendants, their officers, employees, and agents; all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control; and all other persons within the scope of Federal Rule of Civil Procedure 65, are permanently enjoined from enforcing the Birth Certificate Policy, and shall provide certified copies of birth certificates to transgender individuals that accurately reflect their sex, consistent with their gender identity, without the inclusion of information that would, directly or indirectly, disclose an individual's transgender status on the face of the birth certificate;

3. Defendants, their officers, employees, and agents; all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control; and all other persons within the scope of Federal Rule of Civil Procedure 65, shall adopt and enforce a policy whereby a transgender person born in Kansas may obtain a certified copy of that person's birth certificate that reflects a change in sex designation, reflecting their true sex, consistent with their gender identity, by submitting a sworn statement requesting such change and accompanied by: (1) a passport that reflects the person's true sex; or (2) a driver's license that reflects the person's true sex; or (3) a certification issued by a healthcare professional or mental health professional with whom the person has a doctor-patient relationship stating that based on his or her professional opinion the true gender identity of the applicant and that it is expected that this will continue to be the gender with which the applicant will identify in the future[;]

4. The Kansas Department of Health and Environment's Office of Vital Statistics shall issue certified copies of birth certificates that reflect the change in sex designation to plaintiffs Nyla Foster, Luc Bensimon, Jessica Hicklin, and C.K. that reflect their true sex, consistent with their gender identity, respectively.

3

5.  The obligations and this Consent Judgment apply to and are binding upon the Defendants and any successors charged with enforcing laws regarding birth certificates.

Doc. 33 at 2–4.  Now, four years later, defendants ask the court to revisit its Consent Judgment.

On June 23, 2023, the Attorney General of Kansas entered his appearance on defendants' behalf and filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60(b)(5).  Doc. 36. Defendants' filings argue that circumstances have changed in unanticipated fashion since the court entered the Consent Judgment.  Doc. 37 at 1.  Specifically, they report that the Kansas legislature passed SB 180—and this new statute that, according to defendants, "fundamentally changes the circumstances under which the consent judgment was issued." *Id.* at 2.

SB 180 took effect on July 1, 2023.  *See* S.B. 180, 2023 Leg. Sess. (Kan. 2023).  Two provisions of SB 180 are pertinent here.  Section 1(a)(1) defines an individual's "sex" as an "individual's biological sex, either male or female, at birth[.]"  *Id.* at § 1(a)(1).  And § 1(c) provides that any

> school district, or public school thereof, and any state agency, department or office or political subdivision that collects vital statistics for the purpose of complying with anti-discrimination laws or for the purpose of gathering accurate public health, crime, economic or other data **shall identify each individual who is part of the collected data set as either male or female at birth.**

*Id.* at § 1(c) (emphasis added).  Based on these provisions in SB 180, defendants argue they cannot comply with both the Consent Judgment and SB 180.  Doc. 37 at 3.

Plaintiffs oppose defendants' motion.  Doc. 40.  Separately, Kansas Governor Laura Kelly has filed an amicus brief offering her own interpretation of SB 180.  Doc. 39-1.  And defendants have filed a Reply.  Doc. 46.  But, before the court can addresses the merits of the parties' dispute, it must address defendants' Motion to Exceed Page Limit (Doc. 45).

## II.     Motion to Exceed Page Limit

Defendants have asked to exceed the page limit adopted in our court's local rule, D. Kan. Rule 7.1(d)(3).  For motions like the one at issue here, the rule establishes a five-page limit for reply briefs.  D. Kan. Rule 7.1(d)(3).  Defendants assert that they need 14 pages to respond to plaintiffs' Opposition (Doc. 40) and a 13-page *Amicus Curiae* Brief (Doc. 39-1), which the court, without opposition, permitted Governor Kelly to file.  *See* Doc. 41 (granting Unopposed Motion to File).  Plaintiffs haven't responded to defendants' Motion to Exceed.

While less than enthusiastic about the way defendants have chosen to present their request, the court nonetheless grants their motion.[3]  Defendants' filing adequately explains their need for additional pages, and this case presents disputes of broad public interest.  The court thus grants defendants' Motion to Exceed Page Limit (Doc. 45).

With that motion decided, the court now turns to the substance of the current dispute, beginning with the legal standard governing Rule 60 motions, generally, and Rule 60(b)(5) motions, specifically.

## III.     Legal Standard

"A Rule 60(b) motion for relief from judgment is an extraordinary remedy and may be granted only in exceptional circumstances."  *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191–92 (10th Cir. 2018).  This rule "gives the court a grand reservoir of equitable power to do justice in a particular case."  *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos*

---

[3]     The court discourages future use of the methodology defendants employed here, *i.e.*, filing the excessively paged brief and, simultaneously, asking permission to do so.  Defendants' approach violates our local rule—D. Kan. Rule 7.1(d)(4).  That rule required defendants to file their request for more pages at least three days before the filing deadline for the submission at issue.  Defendants concede they didn't comply with this rule, apologize for their non-compliance, and explain that defense counsel is new to the court's bar.  Doc. 45 at 2.

*de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 446 (10th Cir. 2023) (citation and internal quotation marks omitted).

More specifically, defendants here invoke Rule 60(b)(5).  "Rule 60(b)(5) permits relief from a judgment or order if '[1] the judgment has been satisfied, released, or discharged; [2] it is based on an earlier judgment that has been reversed or vacated; or [3] applying it prospectively is no longer equitable.'"  *Jackson*, 880 F.3d at 1192 (emphasis omitted) (quoting Fed. R. Civ. P. 60(b)(5)).  Defendants' current motion relies on the third prong of the rule:  they contend that applying the Consent Judgment prospectively is no longer equitable because SB 180 changed Kansas law.  Doc. 37 at 1.

The Tenth Circuit recently explained the requirements for a Rule 60(b)(5) motion based on the "no longer equitable" prong of the rule:

> a motion for relief from a consent decree based on an assertion that applying it prospectively is no longer equitable demands a different focus than a motion based on an assertion that the judgment has been satisfied, released or discharged.  With respect to the latter ground for relief, it is appropriate for a court to focus on whether the movant has satisfied each obligation set forth in the consent decree.  But where . . . the movant contends that changed circumstances have rendered further enforcement of the consent decree no longer equitable, the inquiry is whether the movant has shown (a) that a significant change in factual circumstances or in law warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance.

*Id.* at 1201 (internal quotation marks omitted) (first citing Fed. R. Civ. P. 60(b)(5); then citing *Horne v. Flores*, 557 U.S. 433, 454 (2009); and then citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–34 (1992)).

In contrast, a "court should deny a party's request for modification under Rule 60(b)(5) if the party merely establishes that 'it is no longer convenient for the moving party to live with the terms of a consent decree.'"  *Id.* at 1194 (quoting *Rufo*, 502 U.S. at 383 (brackets omitted)).  And

"a modification should be denied 'where a party relies upon events that actually were anticipated at the time it entered into a decree.'"  *Id.* (quoting *Rufo*, 502 U.S. at 385).

## IV.    Analysis

The court's analysis begins with two of plaintiffs' arguments.  First, plaintiffs argue that the court already has held that SB 180 violates the Constitution because the Consent Judgment recites that state policies prohibiting transgender Kansans from securing birth certificates reflecting their true sex violate the Constitution.  *See* Doc. 40 at 7–8.  Second, plaintiffs argue, state laws like SB 180 do not qualify as "changed circumstances" within the reach of Rule 60(b)(5) because only changes in *federal* law can qualify.  Neither argument is persuasive, and part A, below, explains why.  Then, in part B, the court addresses the first half of the Rule 60(b)(5) arguments, deciding whether SB 180 represents a significant enough change in circumstances to warrant revision of the Consent Judgment.  In part C, the court addresses plaintiffs' argument that the court should deny the motion because the parties anticipated a law like SB 180 at the time of the Consent Judgment.  And in part D, the court considers whether defendants have satisfied the second half of the Rule 60(b)(5) inquiry and suitably tailored their requested modifications to the Consent Judgment.  Finally, in Part E, the court addresses plaintiffs' argument that the equities of the case require the court to deny defendants' motion.

### A.    Plaintiffs' Threshold Arguments

#### 1.    The Consent Judgment Didn't Rule on the Constitutionality of SB 180

Plaintiffs contend that the Consent Judgment held that "Kansas statutes and regulations . . . which prohibit[] transgender people born in Kansas from obtaining birth certificates reflecting their true sex, consistent with their gender identity, violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States

Constitution."  *See* Doc. 33 at 2–3.  In plaintiffs' view, the cited passage of the Consent

Judgment declared SB 180 unconstitutional.  *See* Doc. 40 at 7.

But, as defendants correctly point out, "the central characteristic of a consent judgment is

that the court has not actually resolved the substance of the issues presented."  18A Charles Alan

Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (3d ed.

2023); *see also Nichols v. Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo.*, 506 F.3d 962, 968

(10th Cir. 2007) ("'[I]n the case of a judgment entered by confession, consent, or default, none of

the issues is actually litigated.'" (quoting Restatement (Second) of Judgments § 27 cmt. e (Am.

L. Inst. 1982))), *abrogated on other grounds by Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838

F.3d 1039, 1043 n.2 (10th Cir. 2016).  So, contrary to plaintiffs' characterization of the issue, the

Consent Judgment didn't resolve the constitutionality of SB 180.

To complicate matters more, district courts are split on the constitutionality of state

policies prohibiting transgender people from amending the sex designation on birth certificates.

*Compare Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020) (holding that Ohio policy

prohibiting transgender Ohioans from changing the sex marker on their birth certificate violated

plaintiffs' substantive Due Process right to privacy and Equal Protection of the laws), *with*

*Fowler v. Stitt*, ___ F. Supp. 3d. ___, No. 22-cv-115-JWB-SH, 2023 WL 4010694 (N.D. Okla.

June 8, 2023) (dismissing First Amendment, Equal Protection, and Due Process claims brought

by transgender Oklahomans seeking to amend sex designation on their birth certificates).

The court declines to utilize the current Rule 60(b)(5) motion as a procedural vehicle to

decide SB 180's constitutionality.  The current motion presents a procedural question.  It's a

motion that requires the court to apply a specific rule of civil procedure and decide whether SB

180 makes it "no longer equitable" for a federal court order to require defendants to follow the

Consent Judgment because SB 180 represents a "a significant change in factual circumstances or in law." *Jackson*, 880 F.3d at 1201.  Deciding the issue presented by the current motion doesn't require the court to opine about SB 180's constitutionality—a question not framed by this case's pleadings or briefed fully by its parties.  The Supreme Court explicitly has directed federal courts to "avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48 (1969).  So, plaintiffs' argument that the court already has decided the constitutionality of SB 180 misapprehends the court's current assignment.

Several of plaintiffs' other arguments rely—mistakenly—on this same premise.  For example, plaintiffs argue that the court can't grant defendants' motion because "governmental actors dead set on discriminating against and violating the rights of vulnerable minorities could just evade federal judgments vindicating constitutional rights by reenacting the very policies found to be in violation of our Constitution."  Doc. 40 at 8.  And, plaintiffs remind the court, that it must "'ensure violations of federal law do not persist if the decree is modified.'" *Id.* at 14 (quoting *Jackson*, 880 F.3d at 1200).  But federal courts don't function as some sort of free-range monitor of state legislatures.  Instead, they decide specific cases and controversies when—but only when—a case's pleadings present an actual case or controversy.  Plaintiffs' threshold arguments rest on the premise that the court already has found that SB 180 violates the Constitution.  It hasn't.  And because the present motion presents a purely procedural question, it constitutes an inappropriate mechanism for resolving the constitutionality of SB 180.

## 2.    State Law Can Support Changed Circumstances Within the Meaning of Rule 60(b)(5)

Plaintiffs next argue that SB 180 can't qualify as a significant changed circumstance because only changes in *federal* law can justify relief under Rule 60(b)(5).  Doc. 40 at 7.  But plaintiffs cite no authority for their proposition that the Rule 60(b) inquiry can't consider changes

9

in state law.  To the contrary, the caselaw, reviewed below, emphasizes that courts must take a

flexible approach to Rule 60(b)(5) motions—an approach that considers state law and federalism

concerns.  Indeed, the cases discussed below closely examined state law.

In *Horne v. Flores*, a federal district court had concluded that a state government violated

federal law—the Equal Education Opportunities Act—by failing to fund English Language-

Learner classes adequately.  557 U.S. at 438–41.  After several years of court orders and

injunctions over the state's funding, the state legislature passed a law designed to implement a

permanent funding solution.  *Id.* at 442.  The state legislature then invoked Rule 60(b)(5) and

asked the district court for relief from its earlier orders.  *Id.* at 443.  The district court denied the

motion and the Ninth Circuit affirmed.  *Id.* at 443–44.  But the Supreme Court reversed.  *Id.* at

459.  It noted that "institutional reform[4] injunctions often raise sensitive federalism concerns,"

particularly in "areas of core state responsibility, such as public education."  *Id.* at 448.  The

Supreme Court thus emphasized that federal courts must take a "flexible approach" to Rule

60(b)(5) motions where a party seeks relief from a long-lasting consent decree.  *Id.* at 450.  And

this flexible approach should "seek[] to return control to state and local officials as soon as a

violation of federal law has been remedied[.]"  *Id.* at 450–51.

*Williams v. Lesiak*[5] also considered whether state law had generated a conflict with a

federal court order.  822 F.2d 1223 (1st Cir. 1987).  There, the district court had entered several

consent decrees requiring Massachusetts to improve conditions at its Treatment Center for

Sexually Dangerous Persons.  *Id.* at 1224.  Years later, the state filed a Rule 60(b) motion based

---

[4]     The current case doesn't strictly qualify as an "institutional reform" case.  Typically, this category
of cases involves schools, prisons, and other institutions funded by state and local governments.
Nonetheless, the court finds the institutional reform cases helpful because they involve sensitive
federalism issues that can arise when a federal court applies its equitable powers to a state government.

[5]     Neither party cited *Williams*, but the court finds it pertinent, and persuasive.

on new administrative regulations promulgated by the state government.  *Id.*  The district court

denied the motion and, on appeal, the First Circuit remanded.  *Id.* at 1233–34.  The First Circuit

acknowledged that the law underlying the court order had not changed because the order "was

based on rights guaranteed by the . . . Constitution."  *Id.* at 1227.  Instead, the Court of Appeals

explained, the "'change in law' . . . [was] a state statute adopted long after the court order,

though overlapping it in subject matter."  *Id.*  The First Circuit emphasized that, when "the

conflict between the goals and provisions of the state statute and the federal court order is less

than clear, delicate questions of federalism must enter into [the court's] inquiry."  *Id.* at 1227–28.

"A hybrid inquiry, involving close attention to both factual and legal detail, is required."  *Id.* at

1228.  The First Circuit then engaged in a "careful reading of both the order and the

[Massachusetts] statute to discover whether their objectives and provisions necessarily

conflict[ed]" in a fashion that was "sensitive to the goals of the decree and the legislation, as well

as to the values of federalism."  *Id.*  In the end, the Circuit concluded that it lacked important

factual findings needed to decide those issues.  So, it remanded for the district court to make

factual findings pertinent to the Rule 60(b) inquiry.

In sum, these cases recognize that changes in state law and conflicts between a new state

law and an existing federal court order can support relief under Rule 60(b)(5).  Here, as in

*Horne*, the state legislature passed a new law, and then the state sought relief under Rule

60(b)(5).  And, like *Horne*, issuing birth certificates is an "area[] of core state responsibility[.]"

557 U.S. at 448.  These precedents thus direct the court to take a flexible approach that is

sensitive to federalism concerns.  *Id.* at 450.  And, here, as in *Williams*, the Consent Judgment

addresses concerns about constitutional violations.  While it's accurate to observe that the law

governing those constitutional concerns hasn't changed, it's equally true that Kansas has passed

a new law that, at the very least, "overlap[s] [the Consent Judgment] in subject matter." 822 F.2d at 1227. These cases suggest a new state law like SB 180 could change circumstances enough to justify relief under Rule 60(b)(5). Given this conclusion, the court now must decide a more daunting question: Have the circumstances in this case changed enough to warrant the relief sought by defendants?

> **B.     SB 180 Represents a Significant Change in Circumstances Because it Conflicts with the Consent Judgment**

Defendants' Rule 60(b)(5) motion argues that applying the Consent Judgment prospectively is no longer equitable. Doc. 37 at 1. To justify Rule 60 relief on this premise, defendants must show "(a) that a significant change in factual circumstances or in law warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance." *Jackson*, 880 F.3d at 1201. Defendants argue that SB 180 qualifies as a significant change in the law because they cannot enforce SB 180 without violating the Consent Judgment. Doc. 37 at 3. Plaintiffs and the Governor counter defendants' point, offering an interpretation of SB 180 that, if correct, would harmonize SB 180 and the Consent Judgment. Doc. 39-1 at 7–11; Doc. 40 at 9–11.

The court has genuine misgivings about inserting itself into the dispute about the meaning of the new Kansas law, SB 180. Absent some issue arising under federal law, a dispute about the meaning of Kansas law belongs in a Kansas state courthouse. And in parallel litigation pending right now in Kansas state court, Kansas state officials are litigating their disputes about SB 180's meaning. *See* Pet. for Mandamus and Injunctive Relief, *State of Kan. ex rel. Kobach v. Harper*, No. SN-2023-CV-422 (Dist. Ct. Shawnee Cnty. July 7, 2023). That controversy involves drivers' licenses, not birth certificates. But even a cursory examination of the state court's records reveals that the parties are advocating their competing interpretations of SB 180.

And indeed, the Kansas state court already has issued a round of preliminary rulings about this core controversy.  Specifically, the Kansas court issued a temporary restraining order forbidding state government officials with administrative jurisdiction over driver's licenses "from processing any requests . . . to change or display their sex in a manner that does not reflect their biological sex as defined by SB 180."  Temporary Restraining Order, *State of Kan. ex rel. Kobach v. Harper*, No. SN-2023-CV-422 (Dist. Ct. Shawnee Cnty. July 10, 2023).[6]

But still, the pertinent analysis of the motion that defendants make here—one seeking relief under Rule 60(b)(5)—requires the court to differentiate between a merely "overlapping state statute" and one that conflicts with the court's existing Consent Judgment.  *Compare Williams*, 822 F.2d at 1229 ("[A]doption of an overlapping state statute does not, without more, constitute justification for modifying a federal court order."), *with Jackson*, 880 F.3d at 1196 (discussing Supreme Court's ruling in *Rufo* and warning that "seemingly endless injunctions and decrees" in institutional reform cases "commonly bind state and local officials to the policy preferences of their predecessors" and thus can "improperly deprive future officials of their designated legislative and executive powers" (internal quotation marks omitted)).  So, wary or not about federalism concerns, the court, to comply with the legal standard governing Rule 60(b)(5) motions, must examine the relationship between SB 180 and the existing Consent Judgment.  It does so, below.

Under Kansas law, "interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature." *Finstad v.*

---

[6]     This restraining order, by its terms, would have expired after 14 days.  But the litigants later agreed to extend it until the state court resolves the Attorney General's motion for a temporary injunction. *See* Agreed Order Extending Temporary Restraining Order, *State of Kan. ex rel Kobach v. Harper*, No. SN-2023-CV-422 (Dist. Ct. Shawnee Cnty. July 18, 2023).  Other court records show the court will conduct a hearing on the injunction request on November 1 of this year.

*Washburn Univ.*, 845 P.2d 685, 690 (Kan. 1993) (citation omitted).  Kansas law directs courts

construing a Kansas statute to "give words in common usage their natural and ordinary

meaning."  *Id.* (citation and internal quotation marks omitted); *see also State v. Marks*, 490 P.3d

1160, 1163 (Kan. 2021) (instructing courts interpreting Kansas statutes to "examine the language

of the provision and apply plain and unambiguous language as written" (citation and internal

quotation marks omitted)).  Also, to determine a Kansas statute's legislative intent, the court may

"look to the purpose to be accomplished and the effect the statute may have under the various

constructions suggested."  *Finstad*, 845 P.2d at 690 (citation omitted).  With these interpretive

principles in mind, the court now compares SB 180 with the Consent Judgment to see whether

they conflict.

The Consent Judgment requires defendants to "provide certified copies of birth

certificates to transgender individuals that accurately reflect their sex, consistent with their

gender identity[.]"  Doc. 33 at 2.  SB 180 § 1(c) provides,

> Any school district, or public school thereof, and any state agency, department or
> office or political subdivision that collects vital statistics for the purpose of
> complying with anti-discrimination laws or for the purpose of gathering accurate
> public health, crime, economic or other data *shall identify each individual who is
> part of the collected data set as either male or female at birth.*

S.B. 180 § 1(c), 2023 Leg. Sess. (Kan. 2023) (emphasis added).  Defendants argue that § 1(c)

creates a duty:  "When the agency is identifying individuals, that identification must include a

sex-at-birth designation, regardless of what other information is present."  Doc. 46 at 9.

The Governor's amicus brief reads the new law differently.  Doc. 39-1.  She argues that

defendants incorrectly read the word "only" or "forever" into SB 180 § 1(c).  *Id.* at 9–10.  The

Governor believes that "there is nothing preventing any state data set from BOTH identifying an

individual as male or female at birth and also identifying them accurately later[.]"  *Id.* at 10

(emphasis in original).  In this argument's view, when a Kansan is born, the state creates a birth record, and the state uses some data from the birth record to create a birth certificate.  *Id.*  Under this view of the new law, the Kansas Department of Health and Environment complies with SB 180 when it creates the initial birth certificate that identifies a person's sex or intersex status at birth.  *Id.*  After that initial birth certificate, SB 180 no longer applies because the new law creates no ongoing duty to "maintain[] data a certain way."  *Id.*

Plaintiffs agree with the Governor's reading of SB 180.  They argue that "a person may *concurrently* be identified by their sex assigned at birth within their birth record/statistical file, consistent with SB 180, and be permitted to correct the sex designation on their birth certificate in [a] manner consistent with their gender identity, in compliance with the Consent Judgment."  Doc. 40 at 10 (emphasis in original).

Assessing these interpretations solely for the purposes of the Rule 60(b)(5) analysis, the court views SB 180 § 1(c) to supply but one option for identifying the sex of an individual:  it's "either male or female at birth."  S.B. 180 § 1(c), 2023 Leg. Sess. (Kan. 2023).  Every time defendants identify someone's sex—whether in a birth record or birth certificate—SB 180 appears to command them to identify that person as "male or female at birth."  Defendants didn't project "only" into SB 180.

In the court's view, this reading conforms with SB 180 § 1(a)(1).  Section 1(a)(1) defines sex for "any state law or rule[] or regulation[]."  *See* S.B. 180 § 1(a), 2023 Leg. Sess. (Kan. 2023) ("[W]ith respect to the application of an individual's biological sex pursuant to *any state law or rules and regulations*, . . . [a]n individual's 'sex' means such individual's biological sex, either male or female, at birth[.]" (emphasis added)).  Kansas regulations allow a person to amend the sex shown on a birth certificate "if the amendment is substantiated with the

registrant's affidavit . . . that the *sex* was incorrectly recorded and with medical records substantiating the registrant's *sex* at the time of birth."  Kan. Admin. Regs. § 28-17-20(b)(1)(A)(i) (emphases added).  Putting § 1(a)(1) and the regulations together:  when a person amends the sex on the birth certificate, the person must show that the sex reported as the person's sex—meaning " biological sex, either male or female, at birth"—was incorrectly recorded.

In sum, SB 180 significantly changed the law.  And in these circumstances, applying the conflicting Consent Judgment prospectively is no longer equitable.  SB 180 conflicts with the Consent Judgment.  Thus, defendants have shouldered the first half of their Rule 60(b)(5) burden.  This segment of the analysis closes with a brief but important postscript.  The court addresses this question only because it reads the federal *procedural* standard to differentiate between "overlapping" and "conflicting."  The court's analysis and conclusion don't diminish the authority of Kansas courts to decide what Kansas law is.  They properly retain that authority, and no one should read this Order to suggest otherwise.

Next, the court addresses the second half of the Rule 60(b)(5) test—whether "the requested modification is suitably tailored to the changed circumstance." *Jackson*, 880 F.3d at 1201.  But first, the court briefly addresses plaintiffs' argument that the court cannot grant the Rule 60(b)(5) motion because the Consent Judgment foresaw these circumstances and intended for the Consent Judgment to remain in effect nonetheless.

### C.    The Consent Judgment Didn't Foresee SB 180 Because No Statute or Regulation Previously Prevented Gender Marker Correction

Plaintiffs argue that defendants have failed to meet their burden under Rule 60(b)(5) because the Consent Judgment "explicitly envisioned the scenario giving rise to the instant motion[.]"  Doc. 40 at 2.  And indeed, the Consent Judgment provides that its obligations "apply to and are binding upon the Defendants and any successors charged with enforcing laws

16

regarding birth certificates." Doc. 33 at 4. Plaintiffs argue that this language shows that the parties foresaw the possibility that Kansas, one day, might try to discriminate against plaintiffs again. *See* Doc. 40 at 2.

But plaintiffs commenced this lawsuit under different circumstances. When plaintiffs filed their Complaint, no "specific statute or regulation prohibit[ed] correction of the gender marker on a birth certificate in order to accurately reflect the sex of a transgender person." Doc. 1 at 14 (Compl. ¶ 63). The Kansas legislature since has enacted a law that, as explained above, only allows defendants to designate a person's sex on a birth certificate as "male or female at birth." The court thus rejects plaintiffs' argument. The parties did not anticipate legislation like SB 180 when they entered the Consent Judgment. The state legislature had not spoken on this issue earlier. Now, it has. *See Jackson*, 880 F.3d at 1196 ("Successor officials may bring new insights and solutions to ongoing problems of allocating revenues and resources, but overbroad or outdated decrees may inhibit their ability to respond to those problems and fulfill their duties as democratically-elected officials.").

### D.     Modifying the Consent Judgment

To merit relief from a consent judgment under Rule 60(b)(5), defendants also must show "that the requested modification is suitably tailored to the changed circumstance." *Id.* at 1201. The court can modify only those portions of the Consent Judgment that have a prospective effect. Fed. R. Civ. P. 60(b)(5) ("[T]he court may relieve a party . . . from a final judgment, order, or proceeding . . . [if] applying it prospectively is no longer equitable[.]"). Defendants ask the court to vacate paragraphs two, three, and five of the Consent Judgment. Doc. 36 at 1. The court agrees with defendants. All three of these paragraphs operate prospectively. So, defendants have "suitably tailored" their request for modifications.

Plaintiffs resist this result, arguing that it renders defendants' motion "facially insufficient." Doc. 40 at 6. According to plaintiffs, the motion seeks no relief from paragraph one of the Consent Judgment, which provides, "Kansas statutes and regulations . . . which prohibit[] transgender people born in Kansas from obtaining birth certificates reflecting their true sex, consistent with their gender identity, violate[] the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Doc. 33 at 2–3. But, as already explained, the court didn't reach this conclusion—the parties reached it, and then jointly asked the court to accept their conclusion. To say it simply, the quoted portion of the Consent Judgment doesn't represent a reasoned conclusion drawn by a court. It manifests, instead, a negotiated agreement adopted by the case's litigants. And this paragraph doesn't apply prospectively, so defendants properly omitted it from the scope of their motion.

E.     The Equities

Finally, the court addresses plaintiffs' concerns about the case's equities. Plaintiffs argue that the court cannot modify the Consent Judgment because transgender Kansans have relied on it for years. Doc. 40 at 14–15. Plaintiffs also argue that granting defendants' motion would "run counter to the public interest" because the Kansas legislature "enacted [SB 180] as part of a campaign by anti-LGBTQ activists to erase the progress made by LGBTQ people over the past decades." *Id.* at 15.

Plaintiffs cite no case where a court has denied Rule 60(b)(5) relief based on reliance interests. And, given the important federalism concerns at issue, the court concludes that an elected, accountable state legislature better can determine the public interest—subject, of course, to any applicable constitutional limitations. Indeed, a decree like the Consent Judgment is detrimental to the public interest when it risks using federal judicial power "improperly [to] interfere with a State's democratic process." *Horne*, 557 U.S. at 453. "Keeping a consent decree

18

in place any longer than necessary to assure compliance with federal law risks violating

principles of federalism and 'improperly depriv[es] future officials of their designated legislative

and executive powers.'" *Jackson*, 880 F.3d at 1193 (quoting *Frew ex rel. Frew v. Hawkins*, 540

U.S. 431, 441 (2004)).

## V.    Conclusion

For the reasons explained above, the court grants defendants' Motion for Relief from

Judgment (Doc. 36).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for

Relief from Judgment (Doc. 36) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Exceed

Page Limit (Doc. 45) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Consent Judgment is

modified to eliminate its paragraphs two, three, and five (Doc. 33 at 3–4).

**IT IS SO ORDERED.**

**Dated this 31st day of August, 2023, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**